**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

UNITED STATES OF AMERICA,
          *Plaintiff-Appellee,*

          v.

RICHARD I. BERGER,
                    *Defendant,*

          v.

CORNELLA BERGER,
     *Third-Party Movant-Appellant.*

No. 08-50415

D.C. No.
2:00-cr-00994-
RMT-1

OPINION

Appeal from the United States District Court
for the Central District of California
Robert M. Takasugi, Senior District Judge, Presiding

Argued and Submitted
June 1, 2009—Pasadena, California

Filed July 31, 2009

Before: William A. Fletcher, Richard R. Clifton, and
Milan D. Smith, Jr., Circuit Judges.

Opinion by Judge Milan D. Smith, Jr.

10023

## COUNSEL

Jenny O. Blake, Chicago, Illinois, for third-party movant-appellant Cornella Berger.

Leon W. Seidman and Brent A. Whittlesey, Assistant United States Attorneys, United States Attorneys Office for the Central District of California, Los Angeles, California, for plaintiff-appellee United States of America.

## OPINION

MILAN D. SMITH, JR., Circuit Judge:

In this appeal, Third-Party Movant-Appellant Cornella Berger (Cornella) contends that the district court erred in including her community property interest in the proceeds of a real estate sale among the funds payable to victims of her former husband's fraud pursuant to the Mandatory Victim Restitution Act (MVRA), 18 U.S.C. § 3663(a). We hold that community property is available to satisfy a restitution judgment obtained under the MVRA against a criminally liable spouse, including that portion of the property that otherwise would potentially be awarded upon dissolution of marriage to an innocent spouse who was not involved in the criminal activity. We thus affirm the order of the district court.

## FACTUAL AND PROCEDURAL BACKGROUND

In 1986, while Richard I. Berger (Richard) and Cornella were married,[1] Richard joined a partnership (Partnership) known as 1748 North Verdugo Road, which he and others formed for the purpose of purchasing a 290-unit apartment complex (Property).

During the relevant period, Richard served as President, Chief Executive Officer, and Chairman of the Board of Craig Electronics (Craig), an electronics wholesaler. On March 19, 2003, a federal grand jury returned a first superceding indictment, charging Richard with thirty-six counts of conspiracy, loan fraud, falsifying corporate books, and other securities fraud violations committed at Craig from 1995 to as late as 1997. After a jury trial, Richard was found guilty on twelve of those counts. There is no evidence that Cornella was involved in any wrongdoing associated with the illegal

---

[1]Though they are now divorced, Cornella and Richard were married during the entire period relevant to this case.

scheme or that any proceeds therefrom were invested in the Property.

Richard was sentenced on September 13, 2004 to a short period of incarceration and was ordered, pursuant to the MVRA, to pay restitution of just over $3.14 million to the victims of his fraud. *See United States v. Berger*, 473 F.3d 1080, 1089, 1104 (9th Cir. 2007).

Before Richard's conviction, the government and the district court anticipated that a large restitution order would likely be imposed against Richard were he to be convicted. Accordingly, in May 2004, the district court ordered Richard to "undertake no payment or transfer of assets in excess of $10,000 without prior court approval." Thereafter, and before obtaining court approval, Richard consented to the Partnership's entering into a contract to sell the Property. In March 2006, the district court ordered that Richard's approximately $1.5 million share of the proceeds from the sale of the Property (the Proceeds) be deposited with the court. *Id.*

Richard appealed his conviction and sentence. We affirmed the conviction, but vacated the sentence and remanded for resentencing. *See Berger*, 473 F.3d at 1108-09. Upon resentencing, the district court imposed a significantly longer incarceration period but entered the same restitution order.

In June 2008, the government filed an application to disburse the Proceeds to the victims of Richard's fraud who were entitled to receive restitution. Cornella opposed the application, arguing that she was entitled to one-half of the Proceeds. Over Cornella's objection, the district court granted the government's application to disburse the entire sum of the Proceeds to the victims.[2] Cornella appeals.

---

[2]The government and Cornella entered into an agreement providing that the court would reserve the funds to which Cornella claimed an interest until this appeal is resolved.

## JURISDICTION AND STANDARD OF REVIEW

We have jurisdiction over this appeal pursuant to 28 U.S.C. § 1291. We review de novo questions of law regarding the application of restitution statutes. *See United States v. Peterson*, 538 F.3d 1064, 1074 (9th Cir. 2008).

## DISCUSSION

Cornella claims that the district court erred by failing to award her a one-half interest in the Proceeds. She first argues that the asset distribution should have been analyzed under case law governing criminal forfeiture. In support of that position, she cites *United States v. Lester*, 85 F.3d 1409 (9th Cir. 1996) (holding that wife's one-half interest in portion of community property was not liable to criminal forfeiture imposed on her husband).

[1] Restitution and forfeiture are distinct asset collection regimes, and they are governed by different rules. Criminal forfeiture is " 'an in personam judgment against a person convicted of a crime.' " *Id.* at 1413 (emphases omitted) (quoting *United States v. $814,254.76 in U.S. Currency*, 51 F.3d 207, 210-11 (9th Cir. 1995)). On the other hand, a restitution order under the MVRA is "a lien in favor of the United States on all property and rights to property of the person fined." 18 U.S.C. § 3613(c).

[2] The district court did not order a criminal forfeiture against Richard; it ordered a restitution under the MVRA. *See generally Berger*, 473 F.3d 1080 (listing penalties imposed in this case and analyzing court's MVRA award, but not mentioning forfeiture); *id.* at 1104 ("The court . . . ordered Berger to pay $3,144,832 in restitution to the lending banks."); *id.* (noting that "restitution in this case is governed by the Mandatory Victims Restitution Act of 1996").[3] Cornella cites no

---

[3]Cornella admitted during a hearing before the district court that "there was no forfeiture count . . . I will concede that."

authority suggesting that a MVRA restitution case may be analyzed under a forfeiture regime, and we are aware of only contrary authority. *See United States v. Mays*, 430 F.3d 963, 965 (9th Cir. 2005) (explaining that MVRA restitution judgments may be enforced using the procedures for the enforcement of civil judgments, but not mentioning forfeiture law). Accordingly, we analyze the allocation of restitution funds in this case using the law governing MVRA restitution.

**[3]** Under the MVRA, the government may collect on a restitution judgment using the procedures available for the collection of criminal fines outlined in 18 U.S.C. § 3613(a), *see* 18 U.S.C. §§ 3613(f), 3664(m), and "may enforce a judgment imposing a fine in accordance with the practices and procedures for the enforcement of a civil judgment under Federal law or State law," *id.* § 3613(a). Moreover, "[n]otwithstanding any other Federal law . . . , a judgment imposing a fine may be enforced against all property or rights to property of the person fined," except in certain circumstances not relevant here. *Id.* Accordingly, under the MVRA, a restitution judgment may be enforced against all of Richard's assets, i.e., his "property or rights to property." *See id.*

**[4]** We next consider whether the Proceeds constitute Richard's "property or rights to property" for the purposes of "enforc[ing] . . . a civil judgment under . . . State law," *id.*, in this case, California law. Under California law, property acquired by either husband or wife during a marriage generally constitutes "community property." *State Bd. of Equalization v. Woo*, 82 Cal. App. 4th 481, 483 (Ct. App. 2000) (citing, *e.g.*, Cal. Fam. Code § 760 ("Except as otherwise provided by statute, all property, real or personal, wherever situated, acquired by a married person during the marriage while domiciled in this state is community property."); *Martin v. S. Pac. Co.*, 130 Cal. 285, 286 (1900)). Here, Cornella and the government agree that the Proceeds are community property.

**[5]** In the ordinary case, "the community estate is liable for a debt incurred by either spouse before or during marriage,

regardless of which spouse has the management and control of the property and regardless of whether one or both spouses are parties to the debt or to a judgment for the debt." Cal. Fam. Code § 910(a). Thus, even though Richard is the only spouse who is a party to the judgment for the debt at issue here, under the MVRA and California law the Proceeds' community property status makes Cornella liable for that debt. *See* 18 U.S.C. §§ 3613, 3664(m); Cal. Fam. Code § 910(a).

Our holding in *In re Soderling* supports this conclusion. *See* 998 F.2d 730, 734 (9th Cir. 1993) (holding that criminal restitution judgment against two appellants was nondischargeable in bankruptcy as to community property the appellants shared with their respective spouses). In that case, we noted that a state restitution order is a "debt" within the meaning of the Bankruptcy Code. *Id.* (citing *Penn. Dep't of Pub. Welfare v. Daveport*, 495 U.S. 552, 557-63 (1990) (superseded on other grounds)). We reasoned that similarities between the definition of "debt" under the Bankruptcy Code and California law would compel the California Supreme Court to determine that a restitution judgment constitutes a "debt" under California law. *Id.* Therefore, we concluded that the federal criminal restitution judgment created a claim against the community under California state law. *Id.* at 733-34. Such is the case here as well.

Cornella argues that, even under a restitution scheme, she is entitled to one-half of the Proceeds. In support of her argument, she cites *Edukere v. United States*, No. 05CV4227(RT), 2008 WL 2824954 (C.D. Cal. July 21, 2008) (unpublished disposition). In *Edukere*, the court held that, where a wife's community property earnings were used to pay the mortgage on her separate property residence, her husband acquired an undivided one-half interest in the pro tanto community property interest. *Id.* at *5.

Even if we were persuaded by the reasoning of an unpublished district court opinion, *Edukere* is unavailing. Contrary

to Cornella's characterization, *Edukere* held that the community property at issue *was* subject to the government's foreclosure action, despite the fact that property interest arose almost exclusively from the innocent spouse's personal earnings. *Id.* Although the court intimated that the spouse may be able to raise some defense to foreclosure based on the community property's not having benefitted from the husband's criminality, the court declined to decide the issue, noting that such an argument was properly made during the separate foreclosure proceeding. *See id.*

**[6]** Cornella also argues that it would be unjust to punish an innocent spouse for her husband's misdeeds. We sympathize with Cornella's situation, but for better or worse, it has long been true in community property jurisdictions that both spouses assume the risks—and benefits—of that legal system. The case books are replete with examples of seeming injustices to innocent spouses where community property laws are applied. Nevertheless, we are bound by California's community property laws, and they control the outcome in this case.

## CONCLUSION

Even though Cornella was not a party to, nor guilty of any criminal wrongdoing in connection with, Richard's fraud, her community property interest in the Proceeds is subject to Richard's obligations under the restitution order entered by the district court.

**AFFIRMED.**