FOR PUBLICATION

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

| | |
|---|---|
| UNITED STATES OF AMERICA, *Plaintiff*, <br><br> TWENTY-NINE PALMS BAND OF MISSION INDIANS, *Third-Party-Plaintiff-Appellant*, <br><br> v. <br><br> GARY EDWARD KOVALL, *Defendant-Appellee.* | No. 15-50419 <br><br> D.C. No. 2:12-cr-00441-MWF-1 |

| | |
|---|---|
| UNITED STATES OF AMERICA, *Plaintiff*, <br><br> TWENTY-NINE PALMS BAND OF MISSION INDIANS, *Third-Party-Plaintiff-Appellant*, <br><br> v. <br><br> DAVID ALAN HESLOP, *Defendant-Appellee.* | No. 15-50420 <br><br> D.C. No. 2:12-cr-00441-MWF-2 <br><br><br> OPINION |

Appeals from the United States District Court
for the Central District of California
Michael W. Fitzgerald, District Judge, Presiding

Argued and Submitted February 10, 2017
Pasadena, California

Filed May 30, 2017

Before:  Susan P. Graber, Jay S. Bybee,
and Morgan B. Christen, Circuit Judges.

Opinion by Judge Bybee

## SUMMARY[*]

### Criminal Law

The panel dismissed appeals by third-party plaintiff Twenty-Nine Palms Band of Mission Indians ("the Tribe") from restitution orders handed down as part of the sentences imposed on two criminal defendants.

The panel held that the Tribe has Article III standing to appeal an award under the Mandatory Victims Restitution Act, but that a victim may not directly appeal such an award. The panel held that neither the MVRA nor the Due Process Clause confers a right on a victim to challenge restitution awards except as provided in 18 U.S.C. § 3771(d)(3).

---

[*] This summary constitutes no part of the opinion of the court.  It has been prepared by court staff for the convenience of the reader.

**COUNSEL**

Richard Freeman (argued) and Evan C. Mix, Sheppard Mullin Richter & Hampton LLP, San Diego, California, for Third-Party-Plaintiff-Appellant.

Edward Murray Robinson (argued), Torrance, California, for Defendant-Appellant Gary Edward Kovall.

David William Shapiro (argued), Boersch Shapiro LLP, Oakland, California, for Defendant-Appellant David Alan Heslop.

Lindsey Greer Dotson (argued), Assistant United States Attorney, Public Corruption & Civil Rights Section; Lawrence S. Middleton, Chief, Criminal Division; United States Attorney's Office, Los Angeles, California; for Plaintiff.

**OPINION**

BYBEE, Circuit Judge:

We are asked whether the victim of a crime may appeal a restitution order handed down as part of a criminal defendant's sentence. We answered "no" when we were asked about victims' rights for restitution ordered under the Victim and Witness Protection Act of 1982. *United States v. Mindel*, 80 F.3d 394, 397 (9th Cir. 1996). The victim here claims that the awarding of restitution under the Mandatory Victims Restitution Act of 1996 presents a different situation, warranting a different rule. We disagree, and join the First, Third, Fifth, Eighth, and Tenth Circuits in holding that a victim may not directly appeal the restitution component of a criminal defendant's sentence under the Mandatory Victims Restitution Act. *See United States v. Slovacek*, 699 F.3d 423, 425–27 (5th Cir. 2012); *United States v. Stoerr*, 695 F.3d 271, 273 (3d Cir. 2012); *United States v. Aguirre-González*, 597 F.3d 46, 54–55 (1st Cir. 2010); *United States v. Hunter*, 548 F.3d 1308, 1316 (10th Cir. 2008); *United States v. United Sec. Sav. Bank*, 394 F.3d 564, 567 (8th Cir. 2004) (per curiam).

I

Given the highly legal nature of the question presented—and the complexity of the factual background—the facts will be recited only briefly and in relevant part. Defendants Kovall and Heslop conspired to engage in, and ultimately engaged in, a scheme to

> corruptly give[], offer[], or agree[] to give anything of value to any person, with intent to

influence or reward an agent of an organization or of a State, local or Indian tribal government, or any agency thereof, in connection with any business, transaction, or series of transactions of such organization, government, or agency involving anything of value of $5,000 or more.

18 U.S.C. § 666(a)(2). In essence, Defendants schemed to use Kovall's position of influence with the Twenty-Nine Palms Band of Mission Indians ("the Tribe") to convince the Tribe to enter into contracts with Defendants' co-conspirators at inflated prices. Defendants would then receive kickbacks based on the Tribe's overpayments.

Defendants pled guilty to conspiracy to commit federal programs bribery under 18 U.S.C. § 371. Pursuant to the Mandatory Victims Restitution Act, *see id.* § 3663A, the district court ordered Defendants to pay restitution to the Tribe. To determine the proper amount of restitution, the district court held hearings where it heard from the Tribe, Defendants, and the government. *See id.* § 3771(a)(4) (giving victims a right to be heard when entitled to restitution). The Tribe presented evidence of its losses; the government and Defendants responded.

At the end of the day, the Tribe did not get all that it asked for. The district court determined the amount of restitution—broken down between the "direct loss" suffered as a result of the offenses and "other fees" incurred as collateral consequences of the offenses—and entered the

sentences.   Defendants appealed the restitution award,[1] claiming that the district court abused its discretion in calculating the "other fees" amount.[2]  The Tribe also filed an appeal, challenging both the "direct loss" and the "other fees" amounts of the restitution order; we asked the parties to address whether the Tribe could do so.

## II

There are three primary acts that govern restitution in criminal cases in the federal courts:  the Victim and Witness Protection Act of 1982 ("VWPA"), largely codified at 18 U.S.C. §§ 3663, 3664; the Mandatory Victims Restitution Act of 1996 ("MVRA"), largely codified at 18 U.S.C. § 3663A; and the Crime Victims' Rights Act ("CVRA"), largely codified at 18 U.S.C. § 3771.[3]  We address each act in turn to describe how the current restitution scheme works.

---

[1] The district court entered two restitution awards, one for each defendant.  Therefore, the Tribe filed two appeals, one for each defendant. Nonetheless, for ease, we will refer to the restitution awards and appeals in this case as singular.

[2] Heslop also appealed his underlying conviction.  All issues other than the Tribe's ability to appeal are dealt with in a memorandum disposition filed herewith.

[3] Congress has also created a number of other mandatory restitutionary schemes for specific areas of criminal offenses.  *See* 18 U.S.C. § 2248 (sexual abuse); *id.* § 2264 (domestic violence and stalking); *id.* § 2327 (telemarketing fraud).  These are not relevant to our discussion here.

A

The Victim and Witness Protection Act of 1982, Pub. L. No. 97-291, 96 Stat. 1248, gives district courts the discretion to order a defendant who is convicted of a criminal offense to pay restitution, in full or in part, to the victim of that offense. 18 U.S.C. § 3663(a)(1)(A)–(B).**[4]** In determining whether to order restitution, the court must consider the amount of loss suffered by the victim, the financial resources and needs of the defendant, and other factors that the court deems appropriate. *Id.* § 3663(a)(1)(B)(i); *see also id.* § 3663(a)(1)(B)(ii) (allowing a district court to decline to order restitution if doing so would complicate or prolong the sentencing process).

The VWPA provides that, if the criminal offense caused property loss or damage, the court may order the defendant either to return the property or to pay the value of property to the victim. *Id.* § 3663(b)(1). If the victim suffered bodily injury, the court may order the defendant to pay for the cost of medical and other professional treatment, physical and occupational therapy and rehabilitation, and lost income; if the offense resulted in loss of life, the defendant may be ordered to pay for funeral and related services; in any case, the defendant may also have to pay for lost income and child care, make restitution in services in lieu of money, and pay for time spent by the victim "in an attempt to remediate the intended or actual harm." *Id.* § 3663(b)(2)–(6).

---

**[4]** The MVRA amended the VWPA to provide for additional procedural protections for victims. *See*, *e.g.*, 18 U.S.C. § 3664(d)(1). For convenience, we discuss the VWPA as amended.

The VWPA also creates procedural rules for determining restitution and enforcing an award.   For example, the probation office must provide certain notice to identified victims, including the right to submit information concerning any losses and the date, time, and place of the sentencing hearing.  *Id.* § 3664(d)(2)(A)(iii), (iv).  In determining the proper amount of restitution, the government bears the burden of proving the amount of loss and must do so by a preponderance of the evidence; the defendant, however, has the burden of demonstrating financial ability and the needs of any dependents.  *Id.* § 3664(e).

B

As part of the Antiterrorism and Effective Death Penalty Act of 1996, Congress enacted the Mandatory Victims Restitution Act of 1996.   Pub. L. No. 104-132, tit. II, §§ 201–11, 110 Stat. 1227, 1227–41; *see* 18 U.S.C. § 3663A. Most notably, for certain crimes—crimes of violence, offenses against property, and any offense committed by fraud or deceit, among others—the district court has no discretion under the MVRA and "shall order" restitution. 18 U.S.C. § 3663A(a)(1), (c)(1)(A).  The rights to restitution conferred by the MVRA are generally enforceable under the procedures in the VWPA.  *See id.* § 3663A(d).  As noted above, the MVRA also amended the VWPA to make some additions to the general rules and procedures for awarding restitution.  *See supra* note 4.

C

As a part of the Justice for All Act of 2004, Congress passed the Crime Victims' Rights Act. Pub. L. No. 108-405, tit. I, § 102(a), 118 Stat. 2261, 2261–64; *see* 18 U.S.C.

§ 3771. The CVRA expands the rights afforded to victims of crime. Those rights now include the right to be reasonably protected from the accused, the right to timely notice of proceedings, the right to be heard at public proceedings, the right to be informed of a plea bargain, and the right "to full and timely restitution as provided in law." 18 U.S.C. § 3771(a). The government is obligated to use its "best efforts" to advise crime victims of these enumerated rights. *Id.* § 3771(c)(1).

The CVRA provides mechanisms for enforcing a victim's rights under the Act. The government, the victim, or the victim's lawful representative may assert the victim's rights in the district court in which the defendant is being prosecuted. *See id.* § 3771(d)(1), (3). The district court must decide a motion asserting a victim's rights "forthwith." *Id.* § 3771(d)(3). And if the district court denies the relief sought, "the movant may petition the court of appeals for a writ of mandamus." *Id.* The court of appeals has seventy-two hours to decide such an application, is to "apply ordinary standards of appellate review," and if it denies the relief sought, must clearly state its reasons in a written opinion. *Id.*; *see also Kenna v. U.S. Dist. Court*, 435 F.3d 1011, 1018 (9th Cir. 2006) (apologizing for our "regrettable failure" to comply with the seventy-two-hour requirement).

There are limitations on the relief a victim may obtain. The CVRA provides that the failure to provide a right under the Act is not grounds for a new trial. 18 U.S.C. § 3771(d)(5). Nevertheless, under certain circumstances (not relevant here) a victim may move to re-open a plea or a sentence. *Id.* The CVRA expressly states that it does not create a cause of action for damages and "shall [not] be construed to impair the prosecutorial discretion of the

Attorney General or any officer under his direction."  *Id.* § 3771(d)(6).

III

The Tribe has taken a direct appeal from the district court's restitution awards.  We held in *United States v. Mindel* that "the beneficiary of [a] criminal restitution order made pursuant to the VWPA[] does not have standing to pursue [an] appeal."  80 F.3d 394, 396 (9th Cir. 1996).  The Tribe argues that *Mindel* is limited to appeals from restitution awards issued under the VWPA and that the Tribe has standing to appeal an award under the MVRA.  We conclude that the Tribe has Article III standing to appeal an award under the MVRA, but we also hold that neither the MVRA nor the Due Process Clause confers a right on the Tribe to challenge restitution awards except as provided in 18 U.S.C. § 3771(d)(3).

A

In order to meet the "irreducible constitutional minimum of standing," three elements must be met:  (1) a party must have suffered an "injury in fact," which is an actual or imminent invasion of a legally protected, concrete, and particularized interest, (2) "there must be a causal connection between the injury and the conduct complained of," and (3) it must be likely that the injury will be redressable by a favorable decision.  *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560–61 (1992).

The general rule is that non-parties to a criminal prosecution have no standing to appeal the judgment.  *See Diamond v. Charles*, 476 U.S. 54, 56 (1986) ("Because a

private party whose own conduct is neither implicated nor threatened by a criminal statute has no judicially cognizable interest in the statute's defense, we dismiss the appeal for want of jurisdiction."); *United States v. Alcatel-Lucent Fr., SA*, 688 F.3d 1301, 1307 (11th Cir. 2012) (per curiam) (recognizing the "default rule" that "crime victims have no standing to appeal a defendant's sentence"); *United States v. Grundhoefer*, 916 F.2d 788, 791 (2d Cir. 1990) ("The direct, distinct and palpable injury in a criminal sentencing proceeding plainly falls only on the defendant who is being sentenced."); *see also Linda R.S. v. Richard D.*, 410 U.S. 614, 619 (1973) ("[A] private citizen lacks a judicially cognizable interest in the prosecution or nonprosecution of another."). The Tenth Circuit explained, "Criminal trials . . . place an individual citizen against the United States government. While non-parties may have an interest in aspects of the case, they do not have a tangible interest in the outcome."  *United States v. Hunter*, 548 F.3d 1308, 1312 (10th Cir. 2008).  The Supreme Court has rejected the standing of non-parties to challenge criminal sentences even when the non-parties claim some kind of collateral effect on their own interests.  *See*, *e.g.*, *Whitmore v. Arkansas*, 495 U.S. 149, 156–57 (1990) (holding that the petitioner lacked standing to challenge the death sentence of another prisoner, even though he claimed Arkansas had a system of "comparative review in death penalty cases").

A victim's challenge to an order of restitution stands on slightly different footing than a non-party appeal from a sentence imposed on a defendant.  The victim has a more direct interest in the outcome of the case and, where the district court's judgment involves a monetary award of restitution to a victim, the victim has a discrete and quantifiable interest in the judgment.  That the victim has

such an interest, however, does not guarantee that the victim has either standing or the right to appeal the restitution order.

We first addressed third-party standing to appeal a restitution award in *Mindel*. In *Mindel*, the district court required Mindel to make restitution payments under the VWPA, and portions of Mindel's stock and property were held as security. *See* 80 F.3d at 396 (noting that the district court "expressly incorporat[ed]" a civil settlement agreement between Mindel and the victims). Mindel failed to meet his payment obligations, and the victims foreclosed on the security for the restitution. Mindel then asked the district court to modify his restitution obligations. In light of the foreclosure and Mindel's diminished ability to pay, the district court rescinded Mindel's obligation to make further payments, and the victims appealed the district court's order. *Id.* We held that the victims had not suffered an "injury in fact" and therefore lacked standing to pursue the appeal. *Id.* at 397; *see also Kelly v. Robinson*, 479 U.S. 36, 52 (1986) ("[T]he decision to impose restitution generally does not turn on the victim's injury, but on the penal goals of the State and the situation of the defendant."). Looking to an Eleventh Circuit opinion, we agreed that the victims' interest was compensatory, while the government's interest was penal, and a "restitution order serves a penal rather than a compensatory purpose." *Mindel*, 80 F.3d at 397 (citing *United States v. Johnson*, 983 F.2d 216, 217–20 (11th Cir. 1993)); *see also United States v. Brown*, 744 F.2d 906, 910 (2d Cir. 1984) ("[T]he VWPA . . . compensate[s] the victim . . . in a manner distinct from the normal functioning of a civil adjudication. . . . [U]nlike a civil suit, the victim is not a party to a sentencing hearing and therefore has only a limited ability to influence the outcome.").

The Tribe argues that the MVRA changed the legal landscape because the MVRA, unlike the VWPA, makes restitution mandatory for certain crimes. *See* 18 U.S.C. § 3663A(a)(1). Whereas district courts *may* award restitution under the VWPA, they *must* award restitution to the victims of the crimes identified by the MVRA. *Compare id.* § 3663(a)(1)(A) ("may order"), *with id.* § 3663A(a)(1) ("shall order"). Moreover, we have held that restitution under the MVRA is not purely penal. *See United States v. Gordon*, 393 F.3d 1044, 1048 (9th Cir. 2004) ("The primary and overarching goal of the MVRA is to make victims of crime whole."); *see also United States v. Serawop*, 505 F.3d 1112, 1122 & n.4 (10th Cir. 2007) ("Even assuming the statute is ambiguous, we have recognized that the MVRA does not inflict criminal punishment, and thus is *not* punitive."). Accordingly, "[w]e've held in some contexts that 'restitution under the MVRA is punishment.' But in other contexts, we've held that it's not. Sometimes we've held it's a hybrid, with 'both compensatory and penal purposes.'" *United States v. Green*, 722 F.3d 1146, 1150 (9th Cir. 2013) (citations omitted).

The differences between the MVRA and the VWPA require a different result here than we reached in *Mindel*. There are two differences, albeit related, that lead us to conclude that victims entitled to restitution under the MVRA have suffered injury in fact when full restitution is not ordered. The first, and most obvious, is that awarding restitution under the MVRA is mandatory, not discretionary. 18 U.S.C. § 3663A(a)(1). Like the VWPA, the MVRA is quite specific as to what the order of restitution shall include. The MVRA covers injury to life and property and provides measures for how to value the damages suffered by the crime victims, including medical expenses, physical therapy, child

care, and funeral expenses. *Id.* § 3663A(b). The mandate in the MVRA means that qualified defendants have at least some claim of entitlement to restitution. *See Bd. of Regents v. Roth*, 408 U.S. 564, 577 (1972) (holding that a "legitimate claim of entitlement" is an injury in fact). Second, because of the restitution mandate, we have now recognized that the policy behind MVRA restitution is at least partially compensatory, and not merely penal, in nature. We thus conclude that victims who contend that they are covered by the MVRA but have not been properly compensated by a district court's restitution order may claim sufficient "injury in fact" to satisfy Article III. *Cf. United States v. Perry*, 360 F.3d 519, 531–32 (6th Cir. 2004) (holding that the "Intervenor has undoubtedly suffered an injury in fact because the district court vacated Intervenor's property interest [obtained in a restitution order] after it had been secured by the judgment lien").

We recognize that two circuits have concluded that putative victims of crime do not have standing to appeal a restitution order under the MVRA. *See United States v. Stoerr*, 695 F.3d 271, 275–78 (3d Cir. 2012); *United States v. United Sec. Sav. Bank*, 394 F.3d 564, 567 (8th Cir. 2004) (per curiam) (citing, *inter alia*, *United States v. Mindel*). For reasons we explain in the next Section, we agree with those courts that victims cannot appeal from a restitution award, but we respectfully disagree that it is because the victims lack Article III standing.**[5]**

---

**[5]** The Third Circuit's decision in *Stoerr* is distinguishable on other grounds. In *Stoerr*, the putative victim was not a direct victim of the fraudulent kickback scheme, but was the defendant's employer, who had voluntarily compensated the victims for its employee's actions. 695 F.3d at 276. The employer then claimed that it was also a victim and entitled

Having concluded that the Tribe has grounds to complain of an injury in fact, we have little difficulty concluding that the Tribe can show a causal connection between the district court's restitution order and its injury and that its injury is redressable at law.

B

The fact that a would-be litigant has Article III standing does not guarantee the right to take an appeal. *See Devlin v. Scardelletti*, 536 U.S. 1, 6–7 (2002) (holding that an unnamed class member satisfied standing where the question was "whether petitioner should be considered a 'party' for the purposes of appealing the approval of the settlement"). In the federal system, there is no general right to an appeal. *See Carroll v. United States*, 354 U.S. 394, 399 (1957) ("It is axiomatic, as a matter of history as well as doctrine, that the existence of appellate jurisdiction in a specific federal court over a given type of case is dependent upon authority expressly conferred by statute."). This is true even in criminal cases. *See Cobbledick v. United States*, 309 U.S. 323, 325 (1940) ("Not until 1889 was there review as of right in criminal cases."); *United States v. Sanges*, 144 U.S. 310, 319 (1892) ("For a long time after the adoption of the Constitution, . . . [it was] settled that criminal cases could not be brought from a Circuit Court of the United States to this court by writ of error, but only by certificate of division of

---

to restitution under the MVRA. The court held that the employer did not have standing to appeal the defendant's sentence and order of restitution and noted that the employer had a civil remedy against its former employee. *Id.* at 274. There is language in *Stoerr* that suggests that the Third Circuit might hold that actual victims also lack standing, but the decision does not have to be read so broadly.

opinion upon specific questions of law."). The power to create "appellate Jurisdiction" in the federal courts is limited to "such Regulations as the Congress shall make." U.S. Const. art. III, § 2, cl. 2; *Sanges*, 144 U.S. at 319 ("The appellate jurisdiction of this court rests wholly on the acts of Congress."). Congress has granted the courts of appeals broad power to hear "appeals from all final decisions of the district courts of the United States." 28 U.S.C. § 1291. But the power to hear appeals does not tell us who may perfect an appeal.

In civil litigation, the "well settled" general rule is that "only parties to a lawsuit, or those that properly become parties, may appeal an adverse judgment." *Marino v. Ortiz*, 484 U.S. 301, 304 (1988) (per curiam); *see Karcher v. May*, 484 U.S. 72, 77 (1987) ("[W]e have consistently applied the general rule that one who is not a party or has not been treated as a party to a judgment has no right to appeal therefrom."). This "general rule" is reflected in the Federal Rules of Appellate Procedure, which similarly provide that only parties to the underlying litigation may appeal the judgment. *See* Fed. R. App. P. 3(c)(1) ("The notice of appeal must: (A) specify the party or parties taking the appeal . . . ."). The Federal Rules of Civil Procedure provide a mechanism for interested persons to intervene in the original litigation, either because they have a statutory right or an interest in the property or transaction that is the subject of the suit, or because they share a common question of law or fact that gives them an interest in the outcome of the suit. *See* Fed. R. Civ. P. 24(a), (b). But even if a person has an interest in the outcome of the litigation, unless the person intervenes in the suit or has a statutory right to appeal, the person cannot

appeal a suit to which it has not become a party.[6]  "[T]he better practice is for such a nonparty to seek intervention for purposes of appeal; denials of such motions, are, of course, appealable."  *Marino*, 484 U.S. at 304.

A similar rule applies in criminal proceedings.  Not until the Act of 1889 did Congress grant defendants the right to appeal their conviction after a final judgment.  *See* 28 U.S.C. § 1291; *Carroll*, 354 U.S. at 400–01; *Sanges*, 144 U.S. at 321–22.  For many years, the government had no right to take an appeal from a judgment in a criminal case.  *See Sanges*, 144 U.S. at 323 (holding that there was "[no] indication of an intention [by Congress] to confer upon the United States the right to bring up a criminal case of any grade after judgment below in favor of the defendant").  Congress finally granted the United States the right of appeal in the Criminal Appeals Act of 1907.  *United States v. Sisson*, 399 U.S. 267, 292–96 (1970).  Congress later granted the government the right to appeal an order dismissing an indictment or granting a new trial, suppressing evidence, or granting the release of a person convicted or charged with an offense.  18 U.S.C. § 3731; *see* Fed. R. App. P. 4(b)(1).  Similarly, Congress has provided that either the government or the defendant may appeal a final sentence and has specified the conditions on which they may appeal.  18 U.S.C. § 3742(a), (b).  By contrast to the rules governing civil litigation, the Federal Rules of Criminal

---

[6] We break from this rule "only in exceptional circumstances."  *S. Cal. Edison Co. v. Lynch*, 307 F.3d 794, 804 (9th Cir. 2002) (citation omitted).  Necessary, but not sufficient, conditions for finding an exceptional circumstance are that the non-party "actually participated in proceedings before the district court and the equities weigh in favor of hearing the appeal."  *EEOC v. Pan Am. World Airways, Inc.*, 897 F.2d 1499, 1504 (9th Cir. 1990).  This judicially created exception has never been extended to the criminal context, and we decline to do so here.

Procedure do not provide for a right of intervention. *Hunter*, 548 F.3d at 1312.

Nothing in the MVRA alters these rules. The MVRA does not confer on victims the right to appeal from a district court's restitution order. The Tribe offers no provision of the MVRA as evidence that Congress granted victims the right to appeal. In light of the longstanding rule that appellate jurisdiction is determined by statute, this is fatal to the Tribe's case for a right to appeal. The Third Circuit has aptly explained:

> [T]he MVRA gives no indication that it disturbs the default rule that only the Government and the defendant can appeal a defendant's sentence. Instead, as the Government explains, § 3664(*o*)(1)(B) notes that a restitution order can be "appealed and modified" pursuant to 18 U.S.C. § 3742. Section 3742 permits appeals by the defendant and by the Government, but does not purport to allow appeals by non-parties.

*Stoerr*, 695 F.3d at 278. This conclusion finds further support in a provision of the CVRA: "In any appeal in a criminal case, the Government may assert as error the district court's denial of any crime victim's right in the proceeding to which the appeal relates." 18 U.S.C. § 3771(d)(4). That Congress authorized the government to defend the restitution rights of victims and did not authorize the victims themselves to pursue their own appeal is nearly conclusive evidence that victims have no right of appeal. *See Stoerr*, 695 F.3d at 279 ("[T]he MVRA's statutory scheme indicates that Congress intended for the Government, rather than for payers and

victims, to be primarily responsible for ensuring proper restitution payments.").

The Tribe argues that Congress granted victims an implied right to appeal, as evidenced by the various provisions of the MVRA that permit victims to participate in the proceedings and require the district court to award restitution to victims. 18 U.S.C. §§ 3663A(a)(1), 3664(d)(2). This observation is too thin to satisfy the rigorous demands that the Supreme Court has placed on defendants and the government alike to demonstrate their right to appeal. *See*, *e.g.*, *Sanges*, 144 U.S. at 323. Absent some statute authorizing appeal by victims, we decline to infer such a right, and we join the other circuits that have similarly refused to recognize such a right. *See United States v. Slovacek*, 699 F.3d 423, 425–27 (5th Cir. 2012); *Stoerr*, 695 F.3d at 278–79; *United States v. Aguirre-González*, 597 F.3d 46, 53–55 (1st Cir. 2010); *Hunter*, 548 F.3d at 1311–12; *United Sec. Sav. Bank*, 394 F.3d at 567.[7]

---

[7] We are aware of, and the Tribe relies heavily upon, *United States v. Kones*, 77 F.3d 66 (3d Cir. 1996). In that case a victim appealed the district court's refusal to order restitution under the VWPA. The Third Circuit did not discuss the victim's right to bring the appeal, but only noted that it had "appellate jurisdiction pursuant to 28 U.S.C. § 1291." *Id.* at 68. No court, including the Third Circuit, has followed *Kones*. *Stoerr*, 695 F.3d at 277 n.5 (stating that it does not consider itself bound by this "bald" and "drive-by jurisdictional" statement (citations omitted)); *see United States v. Fast*, 709 F.3d 712, 716 (8th Cir. 2013) (criticizing *Kones*), *vacated on other grounds sub nom. Vicky, Child Pornography Victim v. Fast*, 134 S. Ct. 1934 (2014) (mem.); *In re Amy Unknown*, 701 F.3d 749, 756 n.5 (5th Cir. 2012) (en banc) (same), *rev'd on other grounds sub nom. Paroline v. United States*, 134 S. Ct. 1710 (2014); *Alcatel-Lucent*, 688 F.3d at 1307 n.2 (same); *United States v. Monzel*,

Finally, we reject the Tribe's claim to a right to appeal for another reason: although Congress has not granted victims a right to appeal a restitution order, it has provided victims with a more limited statutory remedy. The CVRA confers on victims a discrete set of nine rights. We have previously described these, *see supra* Section II.C, but they are largely rights to notice of and participation in any court proceedings. *See* 18 U.S.C. § 3771(a)(1)–(9). The CVRA does not expand the substantive rights to restitution for loss of property and life that were set out in the VWPA and MVRA, but simply repeats that a crime victim has the "right to full and timely restitution as provided in law." *Id.* § 3771(a)(6). The rights described in § 3771(a) "shall be asserted in the district court in which a defendant is being prosecuted for the crime." *Id.* § 3771(d)(3). That subsection further provides that "[i]f the district court denies the relief sought, the movant may petition the court of appeals for a writ of mandamus," and it supplies instructions about our handling of the petition and the timing of our decision. *Id.* Congress thus granted victims a limited right to seek a writ of mandamus in the courts of appeals and omitted any reference to their right to appeal. The Supreme Court has reminded us that when Congress's statutes provide a means of obtaining relief, we "must be chary of reading others into [them]." *TAMA v. Lewis*, 444 U.S. 11, 19 (1979). In other words, Congress's MVRA restitution procedure is "carefully crafted and [its] detailed enforcement scheme provides 'strong evidence that Congress did *not* intend to authorize other remedies that it simply forgot to incorporate expressly.'" *Mertens v. Hewitt Assocs.*,

---

641 F.3d 528, 541 n.13 (D.C. Cir. 2011) (same). We decline to follow *Kones* because it is an unreasoned decision and contrary to well-established principles.

508 U.S. 248, 254 (1993) (citation omitted).  The Tribe has no right to bring the appeal in this case.

C

The Tribe makes an alternative argument that because the MVRA gives victims a statutory right to restitution, it cannot be deprived of that right without a remedy, including a right to appeal.  Citing the Sixth Circuit's opinion in *United States v. Perry*, 360 F.3d 519 (6th Cir. 2004), the Tribe claims that it is "aggrieved by the district court's restitution order." *Perry* stood on a very different procedural ground from this case.  *Perry* did not involve a direct appeal from a restitution order.  Rather, in *Perry*, the district court had ordered restitution to various victims of securities fraud.  The appellant in *Perry* was an "intervenor"[8] who obtained a lien on Perry's real property, arguably in preference to other victims.  The district court vacated the lien and allowed Perry to sell the property and pay the proceeds over to the district court for distribution to all the victims, including the intervenor.  The intervenor then filed an appeal, and the government moved to dismiss for want of standing.  *Id.* at 521–22.

The Sixth Circuit held that the intervenor had standing under the MVRA.  *Id.* at 524.  The MVRA gives a victim the right, after restitution has been ordered, to require a district

---

[8] The record in *Perry* does not disclose how the non-party victim formally intervened in the criminal case.  While holding that the civil rather than criminal notice-of-appeal deadlines applied, however, the court noted that "although the judgment lien is related to a criminal proceeding, . . . a dispute over a lien is more appropriately classified as a 'civil-type' litigation."  *Perry*, 360 F.3d at 524.

court to issue a lien against the defendant's property.  *See* 18 U.S.C. § 3664(m)(1)(B).  The Sixth Circuit held that a non-party victim could appeal the district court's decision to remove such a lien.  *Perry*, 360 F.3d at 526.  It reasoned that depriving a victim of such a constitutionally recognized property interest without *any* due process might raise constitutional concerns.  *See id.* at 525.  Thus, it chose to construe the statute to allow for an appeal of the district court's order removing the lien so as to avoid the possibility of constitutional problems.  *See id.*

But *Perry* has little to do with a non-party victim's ability to appeal a restitution order.  The crux of the Sixth Circuit's logic relies on the fact that it was dealing with a post-restitution-order lien and that a lien is a property interest in state law and within the meaning of the Fifth and Fourteenth Amendments.  *See id.*  The Third, Eighth, Eleventh, and D.C. Circuits all recognized (or strongly hinted) that *Perry* is limited to its procedural posture:  where a district court takes away a judgment lien in satisfaction of an existing restitution order.[9]  *See Stoerr*, 695 F.3d at 279–80 (rejecting *Perry* because a right to restitution is not a right created by state law, thus not a cognizable property interest); *Alcatel-Lucent*,

---

[9] We addressed a similar issue in *United States v. Berger*, 574 F.3d 1202 (9th Cir. 2009).  Berger was ordered to pay some $3 million in restitution to his fraud victims.  After the district court issued a final sentence and restitution order, the government filed an application to disburse the proceeds.  Berger's ex-wife objected on the ground that she was entitled to half the proceeds as community property.  We did not question the ex-wife's standing or right to appeal the distribution order.  *Id.* at 1204.  She was not appealing the restitution order itself and did not claim to be one of Berger's victims.  Instead, she appealed from a different order, one that affected whatever rights she had under California law to the property of the marriage.  *Id.* at 1205–06.

688 F.3d at 1306–07 (noting that *Perry* does not stand for the proposition that a victim may appeal a actual restitution award); *United States v. Monzel*, 641 F.3d 528, 543 & n.15 (D.C. Cir. 2011) ("[T]he victim in *Perry* was not appealing an order *awarding* restitution . . . ."); *United Sec. Sav. Bank*, 394 F.3d at 567 (rejecting *Perry* while noting that it applied only to the release of a judgment lien). Indeed, *Perry* did not extend its ruling to cover a run-of-the-mill right to restitution under the MVRA. *See Perry*, 360 F.3d at 530–31 (contrasting itself with cases that "involved the appeal of an order rescinding or modifying a restitution order").

Even assuming that the MVRA grants victims a constitutionally protected property interest within the meaning of the Due Process Clause, *Perry* does not counsel for allowing a direct appeal here. Although depriving the Tribe of legally owed restitution without *any* process would risk unconstitutionality, the Tribe has been given full process of law. Under 18 U.S.C. § 3771(d)(3), a non-party victim has the opportunity to prove damages in the first instance; if the district court nonetheless issues a ruling that a victim disagrees with, the victim (or government) can ask the district court for relief; and, if denied, the victim (or government) may petition an appellate court for a writ of mandamus. And if that fails, the government can still directly appeal the restitution order, although the government may—in an exercise of its own prosecutorial discretion—choose not to appeal. 18 U.S.C. § 3771(d)(4), (6); *see United States v. Cienfuegos*, 462 F.3d 1160, 1161 (9th Cir. 2006) ("The Government appeals the district court's denial of its motion to order restitution . . . .").

These procedures do not violate the Fifth Amendment's Due Process Clause. To determine the constitutional

sufficiency of procedure under the Due Process Clause, the Court has enunciated a balancing test involving three factors: (1) the private interest that will be affected; (2) the risk of an erroneous deprivation through the procedures used, and the probable value of additional or substitute procedural safeguards; and (3) the government's interest in not applying additional procedural safeguards. *See Mathews v. Eldridge*, 424 U.S. 319, 335 (1976).

*Mathews*'s first factor looks to the "private interest," and while the private interest in restitution is not insignificant, it is nonetheless slight. Restitution is only *partly* compensatory, as its historical roots grow from *entirely* punitive purposes. *See Mindel*, 80 F.3d at 397. Indeed, restitution is an *alternative* to seeking a judgment in civil courts via regular civil proceedings. *See* 18 U.S.C. § 3664(j)(2) ("Any amount paid to a victim under an order of restitution shall be reduced by any amount later recovered as compensatory damages for the same loss by the victim[.]"). So regardless of any failure to receive restitution, a victim can get damages in a civil trial.

The second *Mathews* factor fares only slightly better than the first. The risk of erroneous deprivation is minimal given the aforementioned substantial process afforded to victims. A victim can first make her case to the district court and, if she thinks that the district court erred, she can ask the district court to reconsider. If the district court still thinks that it got it right, then her recourse is a writ of mandamus or asking the government to appeal directly. And so even if the writ of mandamus standard that we are to apply looks for only "clear error," *see Stanley v. Chappell*, 764 F.3d 990, 996 (9th Cir.

2014),**10** the likelihood that this process will result in a restitution order that is wrong, but not clearly wrong, is slight. There may be some value added by permitting an appeal, but the right to due process has never been understood to require the right to an appeal. In any event, Congress has already built a number of safeguards for victims seeking restitution.

The third *Mathews* factor weighs against recognizing a right to appeal. The costs of allowing every putative victim the right to appeal every putative MVRA defendant's restitution order (or lack thereof) might be great, which would increase the costs of appeal to defendants and might thereby impair defendants' own important rights to appeal. Thus, the government's interest in not allowing a victim to re-open a defendant's sentence, except within the strict parameters of § 3771, is significant.

---

**10** We note that, in determining whether to issue a writ under § 3771(d)(3), we have held that "we must issue the writ whenever we find that the district court's order reflects an abuse of discretion or legal error." *Kenna v. U.S. Dist. Court*, 435 F.3d 1011, 1017 (9th Cir. 2006) (recognizing that this "unique regime" under § 3771(d)(3) is different from the ordinary standard for issuing mandamus). *But see*, *e.g.*, *In re Antrobus*, 519 F.3d 1123, 1124 (10th Cir. 2008) (holding that mandamus issued pursuant to § 3771(d)(3) must satisfy the regular mandamus standards). *See generally Monzel*, 641 F.3d at 532–33 (listing circuits on each side of the split).

In 2015, Congress amended § 3771(d)(3) by adding, "[i]n deciding such application [for a writ of mandamus], the court of appeals shall apply ordinary standards of appellate review." Justice for Victims of Trafficking Act of 2015, Pub. L. No. 114-22, tit. I, § 113, 129 Stat. 227, 241 (2015). We need not address whether the amendment affects our decision in *Kenna*. *See generally Hazama v. Tillerson*, 851 F.3d 706, 710 (7th Cir. 2017) (contrasting "ordinary standards of appellate review" with the ordinary standards of mandamus review).

Considering the three factors together, we conclude that, as a matter of due process, the statutory scheme fully protects victims, and we hold that non-party victims may not directly appeal a criminal defendant's restitution award. Congress may, of course, judge the situation differently and decide in the future to give victims additional rights.

IV

Because nothing in the MVRA authorizes victims to appeal a restitution order, and the Due Process Clause does not require it, we hold that the Tribe cannot directly appeal the restitution order.

The Tribe's appeal is **DISMISSED**.