**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

UNITED STATES OF AMERICA,
*Plaintiff-Appellant*,

v.

DONALD MITCHELL JOHNSON,
AKA Ski Johnson,
*Defendant-Appellee.*

No. 15-30350

D.C. No.
2:14-cr-00028-DLC-1

AMENDED OPINION

Appeal from the United States District Court
for the District of Montana
Dana L. Christensen, Chief Judge, Presiding

Argued and Submitted February 7, 2017
Seattle, Washington

Filed April 21, 2017
Amended August 22, 2017

Before: Richard A. Paez and Consuelo M. Callahan,
Circuit Judges, and Morrison C. England, Jr.,[*] District
Judge.

Opinion by Judge Callahan

---

[*] The Honorable Morrison C. England, Jr., United States District Judge for the Eastern District of California, sitting by designation.

## SUMMARY[**]

### Criminal Law

On a government appeal in a case in which the defendant was convicted of wire fraud, the panel filed an amended opinion vacating the restitution order, denied the defendant's petition for panel rehearing, and on behalf of the court denied his petition for rehearing en banc.

In the amended opinion, the panel wrote that the government's decision not to appeal a pretrial evidentiary ruling does not bar this court's review of its appeal from the district court's restitution order under 18 U.S.C. § 3742(b)(1).

The panel held that under 18 U.S.C. § 3663A and Ninth Circuit precedent, the district court could properly order restitution for all victims harmed by the defendant's scheme to defraud, including those harmed by conduct beyond the count of conviction, and that the district court's conclusion to the contrary constituted an abuse of discretion. The panel remanded for the district court to make factual findings to determine whether the defendant's activities beyond the count of conviction are sufficiently related to be included for restitution purposes in the defendant's overall scheme to defraud.

---

[**] This summary constitutes no part of the opinion of the court. It has been prepared by court staff for the convenience of the reader.

## COUNSEL

Chad Spraker (argued), Assistant United States Attorney; Michael W. Cotter, United States Attorney; United States Attorney's Office, Helena, Montana; for Plaintiff-Appellant.

Michael Donahoe (argued), Senior Litigator; Anthony R. Gallagher, Federal Defender; Federal Defenders of Montana, Helena, Montana; for Defendant-Appellee.

## OPINION

CALLAHAN, Circuit Judge:

A jury convicted Donald "Ski" Johnson of wire fraud in violation of 18 U.S.C. § 1343. The district court sentenced Johnson to five years' probation and ordered Johnson to pay $5,648.58 in restitution. On appeal, the government argues that the district court erred by considering only Johnson's fraudulent conduct that occurred in Montana (the count of conviction) when determining restitution, and thus misinterpreted the Mandatory Victim Restitution Act ("MVRA"). *See* 18 U.S.C. § 3663A. We vacate the district court's restitution order and remand for determination of whether Johnson's conduct outside of Montana was related to his scheme to defraud.[1]

---

[1] Johnson also filed a cross-appeal of his conviction, *United States v. Johnson*, No. 15-30356, arguing insufficiency of the evidence. We dispose of his appeal in a separate memorandum disposition.

**BACKGROUND**

In 2011, Johnson, using the alias Larry Toye, promoted a black-tie gala in Seattle, Washington. The event was intended to benefit the American Cancer Society and Johnson's charity, the Jazz For Life Foundation. While on the phone with a promoter, Johnson, acting as Toye, falsely described himself as a Grammy-nominated musician. Johnson also promised the attendance of celebrities such as James Earl Jones and Michael Douglas. Neither Jones nor Douglas had any knowledge of the event, nor were they inclined to attend. The event was eventually cancelled, but, by the time Johnson's fraud was discovered, Johnson's foundation had collected over $13,000 in ticket sales, $9,300 of which had been transferred to Johnson's personal account.

Later in 2011, Johnson—this time under the alias Kevin Wright—contacted the Hospice of Palm Beach County in Florida to inquire about participating in the organization's celebrity golf event. Johnson offered Grammy tickets to be auctioned at the event, with the proceeds split between the hospice and Johnson's foundation. The tickets were auctioned for $12,000 ($5,500 of which was sent to Johnson's foundation), but the tickets were never produced, and the purchaser did not attend the Grammys.

In May 2012, Johnson called Barb Rooney, Vice President of the Big Sky Resort in Montana. Johnson, again using the alias Kevin Wright, identified himself as a representative of both Sony and Johnson, a Grammy-nominated musician. In a similar fashion to his encounter with the Hospice of Palm Beach County, Johnson offered Grammy tickets to be auctioned off at a fundraiser organized by Big Brothers and Big Sisters ("BBBS"). The tickets were

auctioned for $6,000. Johnson attempted to collect his share of the proceeds, but, after BBBS learned of Johnson's misrepresentations, it returned the proceeds to the bidder.

Johnson was indicted in 2014 for one count of wire fraud in violation of 18 U.S.C. § 1343. The indictment alleged Johnson's scheme to defraud extended from 2011 to 2014 and occurred "in the District of Montana and elsewhere." However, the indictment specifically identified only a single Virginia-Montana wire transmission relating to the BBBS event. Johnson thus moved to limit the government's trial evidence to that one event. The government argued in opposition that evidence of other fraud was admissible to prove Johnson's scheme to defraud. The district court concluded that evidence of wire fraud not specifically charged in the indictment was inadmissible as improper propensity evidence under Federal Rule of Evidence 404(b)(2).[2] Ultimately, the court restricted the government's trial evidence to the BBBS event, stating in its pretrial ruling that "the government will not be permitted to prove the scheme underlying the Montana fraud by putting on evidence that Johnson employed the same scheme in another fraud outside of Montana."

A jury convicted Johnson, and the government sought restitution for Johnson's entire scheme, contending that he owed over $70,000. The district court considered additional

---

[2] When the district court invoked Rule 404(b) to exclude evidence of wire fraud not specifically charged in the indictment, it did not have the benefit of our opinion in *United States v. Loftis*, 843 F.3d 1173 (9th Cir. 2016). There, we held that evidence of uncharged transactions to prove a scheme to defraud was not inadmissible as improper propensity evidence under Rule 404(b). Because the government did not pursue an appeal under 18 U.S.C. § 3731, however, the issue is not before us.

evidence of Johnson's scheme for sentencing enhancement purposes, but it refused to consider evidence beyond the BBBS event (the count of conviction) for restitution purposes and limited restitution to $5,648.58. The government appealed.

## DISCUSSION

### A. Jurisdiction and Standard of Review

We review de novo Johnson's contention that we lack jurisdiction to consider the government's challenge to the district court's restitution order. *United States v. Decinces*, 808 F.3d 785, 789 (9th Cir. 2015) ("We have jurisdiction to determine our own jurisdiction. We review this question de novo." (internal citations omitted)).

This court has jurisdiction "of appeals from all final decisions," 28 U.S.C. § 1291, and the government may appeal any "final sentence" of a district court "if the sentence was imposed in violation of law[.]" 18 U.S.C. § 3742(b)(1). "A sentence that imposes an order of restitution is a final judgment." 18 U.S.C. § 3664(o); *see also United States v. Brock-Davis*, 504 F.3d 991, 993 (9th Cir. 2007) (finding court had jurisdiction under § 1291 to review restitution order). We therefore have jurisdiction to review the government's appeal from a district court's restitution order.

Johnson argues, however, that the government's challenge to the restitution order here is instead an attempt at an impermissible end-run around its failure to appeal the district court's pretrial evidentiary ruling, which limited the government's trial evidence to fraud relating to the BBBS event. According to Johnson, the government was required

to appeal immediately, and, by failing to do so, it waived review of this issue in its entirety.

Although the government could have appealed the district court's evidentiary ruling, *see United States v. Loftis*, 843 F.3d 1173, 1175–76 (9th Cir. 2016), its decision not to do so does not bar our review of its appeal from the district court's restitution order under § 3742(b)(1). *See United States v. Kovall*, 857 F.3d 1060, 1069 (9th Cir. 2017) (stating that § 3664(o) permits the government to appeal an order of restitution, so long as the appeal is made pursuant to § 3742). The government is therefore not foreclosed from challenging the district court's limitation on the restitution order even though it flows from the same issue as the district court's evidentiary ruling. We therefore have jurisdiction to review the district court's restitution order, and we review that order for an abuse of discretion. *Brock-Davis*, 504 F.3d at 996.

## B. Restitution Order

The district court relied on *United States v. Hughey*, 495 U.S. 411 (1990), in concluding that it could not consider fraud beyond the BBBS event for the purposes of restitution. In *Hughey*, the Supreme Court held that a restitution award under the 1982 Victim and Witness Protection Act ("VWPA") was limited to "the loss caused by the specific conduct that is the basis of the offense of conviction." 495 U.S. at 413; 18 U.S.C. § 3579 (1982), *amended by*, 18 U.S.C. § 3663 (1990)).

In response, Congress amended the VWPA in 1990 to partly overrule *Hughey*. *See* 18 U.S.C. § 3663; *see also United States v. Lawrence*, 189 F.3d 838, 846 (9th Cir. 1999) ("Congress amended the VWPA's definition of victim to

partially overrule *Hughey*."). The current iteration of the VWPA authorizes restitution for "any victim" of certain enumerated offenses. 18 U.S.C. § 3663(a)(1)(A). The act defines a "victim" as "any person directly harmed by the defendant's criminal conduct in the course of the scheme, conspiracy, or pattern." *Id*. § 3663(a)(2).

Following the 1990 amendments, we have recognized that the VWPA allows district courts to order restitution for crimes involving a scheme to defraud to "include acts of related conduct for which the defendant was not convicted." *Lawrence*, 189 F.3d at 846; *see also United States v. Rutgard*, 116 F.3d 1270, 1294 (9th Cir. 1997) ("After the amendment [to the VWPA], restitution may be ordered for losses to persons harmed in the course of the defendant's scheme *even beyond the counts of conviction*." (emphasis added)). We have since applied the same approach to the MVRA. *See Brock-Davis*, 504 F.3d at 996 ("Because of similarities between the MVRA and the [VWPA], we may look to cases decided under the VWPA for guidance in interpreting the MVRA.") (internal citations omitted)); *United States v. Grice*, 319 F.3d 1174, 1177–78 (9th Cir. 2003) ("The MVRA's definition of victim is identical [to the VWPA's], and we interpret it as we have the definition under the VWPA." (internal citations omitted)). Wire fraud involves a scheme to defraud. *See* 18 U.S.C. § 1343.[3] Accordingly, under the

---

[3] The wire fraud statute in part states:

> Whoever, having devised or intending to devise any scheme or artifice to defraud, or for obtaining money or property by means of false or fraudulent pretenses, representations, or promises, transmits or causes to be transmitted by means of wire, radio, or television communication in interstate or foreign commerce, any

MVRA, "restitution may be ordered for all persons directly harmed by the entire scheme" and "is thus not confined to harm caused by the particular offenses for which [the defendant] was convicted." *United States v. Booth*, 309 F.3d 566, 576 (9th Cir. 2002).

Here, the district court, believing it was bound by *Hughey*, only considered loss related to Johnson's fraudulent conduct while organizing the BBBS event. Specifically, prior to the start of witness testimony at the sentencing hearing, the district court concluded that it could not award restitution beyond the count of conviction "under the law, the law of this case, and the law under the United States Supreme Court decision of [*United States v. Hughey*]."[4] This constituted an abuse of discretion. *See Cooter & Gell v. Hartmarx Corp.*, 496 U.S. 384, 405 (1990) ("A district court would necessarily abuse its discretion if it based its ruling on an erroneous view of the law . . . ."). Under 18 U.S.C. § 3663A and Ninth Circuit precedent, the district court could properly order restitution for all victims harmed by Johnson's scheme, including those harmed by conduct beyond the count of conviction. Accordingly, we vacate the district court's restitution order and remand for the court to make factual findings to determine whether Johnson's activities beyond the

---

writings, signs, signals, pictures, or sounds for the purposes of executing such scheme or artifice, shall be fined under this title or imprisoned not more than 20 years, or both.

18 U.S.C. § 1343.

[4] It appears that the relevant Ninth Circuit precedent recognizing abrogation of this holding of *Hughey* was not brought to the district court's attention.

BBBS event are sufficiently related to be included for restitution purposes in Johnson's overall scheme to defraud.**⁵**

The restitution order is **VACATED**, and the issue is **REMANDED** to the district court.

---

**⁵** The government contends that Johnson's scheme to defraud should be defined broadly to include his misrepresentations as a Grammy-nominated musician with a charitable purpose. We do not decide this issue, but note that much of Johnson's conduct may be sufficiently related to his scheme to be included in a restitution order. Our cases have embraced a broad definition of scheme to defraud. *See, e.g.*, *United States v. Morse*, 785 F.2d 771, 774 (9th Cir. 1986) (recognizing that, in the mail fraud context, the Ninth Circuit "takes a broad view of a single scheme"); *see also United States v. Shipsey*, 363 F.3d 962, 971 n.10 (9th Cir. 2004) ("It is well settled that cases construing the mail fraud and wire fraud statutes are applicable to either.").