**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS FOR THE NINTH CIRCUIT

| | |
|---|---|
| In re: JOSHUA DAVIS | No. 24-3090 |
| _____ | D.C. Nos. 3:19-cr-00040-WHO 3:19-cr-00676-WHO |
| JOSHUA DAVIS, *Petitioner*. | |
| v. | |
| UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF CALIFORNIA, SAN FRANCISCO, *Respondent*. | ORDER AND AMENDED OPINION |
| UNITED STATES OF AMERICA; AHMAD WAGAAFE HARED; MATTHEW GENE DITMAN; ANTHONY FRANCIS FAULK, *Real Parties in Interest*. | |

In re: N.A.

_____

N. A.,

*Petitioner*,

 v.

UNITED STATES DISTRICT
COURT FOR THE NORTHERN
DISTRICT OF CALIFORNIA, SAN
FRANCISCO,

*Respondent*,

UNITED STATES OF
AMERICA; AHMAD WAGAAFE
HARED; MATTHEW GENE
DITMAN; ANTHONY FRANCIS
FAULK,

*Real Parties in Interest*.

No. 24-3092

D.C. Nos.
3:19-cr-00040-
WHO
3:10-cr-00676-
WHO

Petition for Writ of Mandamus

Argued and Submitted October 10, 2024
San Francisco, California

Filed June 2, 2025
Amended August 1, 2025

Before: Lucy H. Koh and Anthony D. Johnstone, Circuit Judges, and Michael H. Simon, District Judge.[*]

Order;
Opinion by Judge Koh;
Concurrence by Judge Johnstone

## SUMMARY[**]

### Restitution

Petitioners, Joshua Davis and N.A., were the victims of cryptocurrency theft and extortion. Petitioners promptly notified the government of the theft and extortion, filed petitions for "remission" of the lost cryptocurrency with the government, and participated in the criminal investigation. Due to a series of communication errors between the government agencies responsible for calculating restitution, however, the government submitted restitution amounts to the district court that did not account for the full value of Petitioners' stolen cryptocurrency. After discovering that the district court entered the incorrect amounts in the restitution orders, Petitioners attempted to correct the restitution orders through the procedures set forth in the Mandatory Victims Restitution Act (MVRA), 18 U.S.C. § 3664(d)(5), and the

---

[*] The Honorable Michael H. Simon, United States District Judge for the District of Oregon, sitting by designation.

[**] This summary constitutes no part of the opinion of the court. It has been prepared by court staff for the convenience of the reader.

Crime Victims' Rights Act (CVRA), 18 U.S.C. § 3771(d)(3).

The panel granted two petitions for writs of mandamus brought under the CVRA, § 3771(d)(3), and remanded for further consideration in the district court as to whether Petitioners met the requirements to reopen restitution proceedings set forth in the MVRA, § 3664(d)(5). The panel held that Petitioners were entitled to seek mandamus relief through the CVRA's mandamus procedure in § 3771(d)(3). The panel determined that § 3771(d)(3), which allows the assertion of a crime victims' rights when "no prosecution is underway," permits the assertion of rights under the MVRA, § 3664(d)(5), during the period after judgment is entered. The panel then determined that post-judgment petitions to reopen restitution brought under the MVRA, § 3664(d)(5), qualify as "any motion asserting a victim's right" under § 3771(d)(3). Petitioners were therefore entitled to bring a mandamus petition before the court of appeals pursuant to the CVRA, § 3771(d)(3). The panel further held that the limitations on motions to re-open a sentence set forth in the CVRA, § 3771(d)(5), do not apply to petitions to reopen restitution brought under § 3664(d)(5). Finally, the panel granted the petitions for writs of mandamus because the panel concluded that the MVRA, § 3664(d)(5) allows crime victims to petition to reopen restitution when, as here, a victim "subsequently discovers" that a district court's restitution order failed to include recoverable losses. The panel remanded to the district court to consider whether Petitioners met the additional good cause and timing requirements set forth in the MVRA, § 3664(d)(5).

Concurring in full in the majority opinion, Judge Johnstone wrote separately to note that the majority opinion primarily addresses a victim's ability to seek amendment of

restitution orders under § 3664(d)(5) of the MVRA. Judge Johnstone wrote that the majority opinion considered § 3771(d)(3) as the source of the court's mandamus authority to correct the district court's denial of relief under § 3664(d)(5), and considered the limitations in § 3771(d)(5) to explain that those limitations do not apply to motions brought under § 3664(d)(5).

**COUNSEL**

Elisha J. Kobre (argued) and Stephen K. Moulton, Sheppard Mullin Richter & Hampton LLP, Dallas, Texas; N.A. (argued), Pro Se; Paul G. Cassell, Utah Appellate Project, S.J. Quinney College of Law at the University of Utah, Salt Lake City, Utah; for Petitioners.

Merry J. Chan (argued), Chief, Appellate Section, Criminal Division; Robert S. Leach, Assistant United States Attorney; Ismail J. Ramsey, United States Attorney; Office of the United States Attorney, United States Department of Justice, San Francisco, California; for Real Party in Interest.

Carmen A. Smarandoiu (argued) and Angela Chuang, Assistant Federal Public Defenders; Jodi Linker, Federal Public Defender; Federal Public Defenders Office, San Francisco, California; for Real Party in Interest.

Gail Shifman, Law Office of Gail Shifman, San Francisco, California, for Real Party in Interest.

Jennifer J. Wirsching, Law Office of Jennifer Wirsching, Burbank, California, for Real Party in Interest.

**ORDER**

The Opinion filed on June 2, 2025, is amended as follows:

> On slip opinion page 12, line 1: replace <and that believed> with <and the district court believed>
>
> On slip opinion page 27, line 4: replace <364> with <364.>
>
> On slip opinion page 32, line 32 through page 33, line 3: replace <The district court's contrary interpretation treated Petitioners' "losses" solely as "the number of stolen Ethereum" rather than the value of those Ethereum. Though perhaps intuitive in isolation, that reading takes "losses" out of context.> with <The word "losses" in § 3664(d)(5) encompasses the value of the stolen Ether.>

The Panel has voted to deny the Petitions for Panel Rehearing. Judge Johnstone and Judge Koh have voted to deny the Petitions for Rehearing En Banc, and Judge Simon has so recommended. The full court has been advised of the Petitions for Rehearing En Banc, and no judge has requested a vote on whether to rehear the matter en banc. Fed. R. App. P. 40. The Petitions for Rehearing and Rehearing En Banc are therefore DENIED. No further petitions for rehearing of the Amended Opinion may be filed.

**OPINION**

KOH, Circuit Judge:

These related petitions stem from a cryptocurrency theft and extortion scheme. Joshua Davis ("Davis") and N.A. (collectively, "Petitioners") each petition for a writ of mandamus ordering the U.S. District Court for the Northern District of California to correct erroneous restitution orders arising from three criminal defendants' theft of Petitioners' cryptocurrency. The United States of America (the "government") as well as Ahmad Wagaafe Hared ("Hared"), Matthew Gene Ditman ("Ditman"), and Anthony Francis Faulk ("Faulk") (collectively, "the defendants") are real parties in interest in this proceeding.

This dispute centers on a procedural question: whether a mechanism exists for Petitioners to assert their right to full restitution after the court has entered judgment. We conclude that the Mandatory Victims Restitution Act, 18 U.S.C. § 3664(d)(5), provides a procedural mechanism for relief under these circumstances, and that the Crime Victims' Rights Act, 18 U.S.C. § 3771(d)(3), permits us to review the district court's denial of such relief on petition for a writ of mandamus. Because the district court ordered incorrect restitution amounts and erred in denying Petitioners' motions to reopen, we grant the petitions for a writ of mandamus and remand these matters to the district court for further consideration in accordance with this opinion.

## BACKGROUND

### I.  Factual Background

#### A.  The defendants stole cryptocurrency and extorted Davis.

Petitioners were victims in a cryptocurrency theft and extortion scheme. In 2014, Davis and his friend N.A. invested in a new cryptocurrency, known as Ether.[1] Davis handled the transactions, purchasing Ether for himself and on behalf of N.A.. Davis then emailed instructions to N.A., explaining how to access the Ether in N.A.'s digital account.

Two years later, the defendants targeted Davis. The defendants first impersonated Davis to his cellphone company and deceived the cellphone provider into handing over control of Davis's cellphone number. Using the misappropriated cellphone number, the defendants hacked into Davis's email accounts, reset his passwords, and invaded his electronic storage records. The defendants used password information within those accounts to steal both Petitioners' Ether. The conspirators then called Davis and threatened to expose his private information unless he paid them more money.

#### B.  Petitioners reported the crime to the government.

Davis reported the cryptocurrency theft and the extortion to the Federal Bureau of Investigation ("FBI") a few days

---

[1] Ether is a cryptocurrency that is supported by a decentralized blockchain, known as Ethereum, which is a "distributed ledger" that permanently stores information. Nathan Reiff, *What is Ether (ETH), the Cryptocurrency of Ethereum Apps?*, Investopedia (May 26, 2024), https://www.investopedia.com/tech/what-ether-it-same-ethereum/ [https://perma.cc/77HK-47C3] ("Ether . . . is the native cryptocurrency of the Ethereum platform.").

after the initial theft. His report included recordings of the extortion attempt and alleged that a "malicious hacker" stole $43,000 worth of cryptocurrency from the Ethereum accounts. Davis later filed a Petition for Remission/Mitigation of Forfeiture ("remission petition") with the FBI.[2] Davis's petition stated that the defendants stole 134.5 Ether, then worth $249,158, from his account. His remission petition links directly to the Ethereum ledger's records of the illegal transfers. Sometime later, Davis further assisted the investigation by testifying before a grand jury.

N.A. also reported the crime to multiple government officials. He first informed an FBI agent in 2016, via a phone call and follow-up email, that he lost 4,080.3 Ether in the theft. In 2018, N.A. filed a remission petition with the FBI stating, again, that 4,080.3 Ether were stolen from him. N.A. reported that the value of his Ether as of October 19, 2018, was $830,464.30 and that the value of the Ether at the time of the theft was $38,885.30. N.A. later spoke with a different FBI representative and confirmed that 4,080.3 Ether were stolen. He also filed a second remission petition in February 2020, affirming that 4,080.3 Ether were stolen from him. In that petition, N.A. stated his Ether was then worth $911,907.17.

Eventually, the government indicted the defendants in the Northern District of California. Hared and Ditman pled guilty to computer fraud and abuse in violation of 18 U.S.C.

---

[2] Remission is a process in civil or criminal forfeiture proceedings where the Department of Justice "solicits, considers, and rules on [crime victims'] petitions for payment" from forfeited funds held by the DOJ. U.S. Department of Justice, *Asset Forfeiture Policy Manual* 14-1 (2023). This process is separate from criminal restitution, which seeks funds directly from the criminal defendant. *See id; see also* 28 C.F.R § 9 (providing procedural regulations governing remission).

§ 1030(b) and aggravated identity theft in violation of 18 U.S.C. § 1028A(a)(1). Faulk, who was indicted separately, pled guilty to conspiracy to commit wire fraud in violation of 18 U.S.C. § 1349.

As the underlying criminal cases proceeded, Davis and N.A. received periodic notices from the United States Attorney's Office for the Northern District of California through the Department of Justice's Victim Notification System ("VNS"). For example, after each defendant pled guilty, Petitioners received VNS notices that informed recipients of their "right to full and timely restitution as provided in law." The VNS notices also stated that a victim may file a victim impact statement and that they should "submit proof of [their] loss along with all supporting documents" as this "may be [their] final opportunity to submit proof of loss to substantiate an Order of Restitution." Petitioners did not respond to these notices and did not participate in the sentencing proceedings.

## C. The government failed to properly calculate restitution.

As the district court explained, the government "apparently made two substantial missteps in this case." First, the government did not "communicat[e] between the remission and restitution teams." Thus, the probation office—which receives proposed loss amounts from the United States Attorney's Office—recommended that the defendants pay only $43,000 in restitution to Davis and $40,000 to N.A. Second, the government did not "ensur[e] that probation included the restitution amounts in the notices to victims." At the sentencings, the government did not object to the probation office's recommended restitution amounts. Thus, the district court imposed joint and several

liability for restitution of $40,000 to N.A. and $43,000 to Davis for each defendant.[3]

These restitution amounts dramatically understated the value of Petitioners' Ether. As the district court later acknowledged, "[a]t the defendants' sentencing hearings, I entered restitution that reflected what the government sought in restitution, not the much higher numbers that the victims sought in remission." After learning of these errors, Petitioners began proceedings before the district court to correct the restitution orders. N.A. filed a belated victim impact statement on October 28, 2023, explaining that the stolen Ether was worth "more than $7 million at sentencing." Davis and N.A. then filed motions to reopen the sentences to amend restitution in the underlying criminal cases.

## D.  The district court denied relief.

Before the district court, Davis and N.A. both argued that the district court erred by ordering restitution of only $43,000 and $40,000, respectively, when the value of their stolen Ether was far higher on the dates of each sentencing, and 18 U.S.C. § 3663A(b)(1)(B) required the court to order restitution equal to the value of the stolen Ether on the dates of each sentencing. Davis stated that his stolen Ether was worth $229,430 on the date of Hared's sentencing; $210,730 on the date of Ditman's sentencing; and $242,912 on the date of Faulk's sentencing. N.A stated that his stolen Ether was worth $7,376,006.59 on the date of

---

[3] The district court sentenced Faulk on August 17, 2023, Hared on August 31, 2023, and Ditman on October 12, 2023. Hared and Ditman received probationary sentences of five and three years respectively. Faulk received a 36-month custodial sentence to be served concurrently with his sentence for a related federal money laundering conviction in the Northern District of Georgia.

Faulk's sentencing. Petitioners reach these figures based on the highest price Ether achieved on the given day of trading, or the "day high" price. Notably, on Faulk's sentencing date, Ether's price fluctuated by roughly $250.

Thus, Petitioners argued, they were entitled to the full value of their stolen Ether as of the dates of each sentencing, and the district court should reopen restitution under 18 U.S.C. § 3771(d)(3). In the alternative, Petitioners argued the district court should determine that Petitioners had "subsequently discover[ed] further losses" under 18 U.S.C. § 3664(d)(5), which would allow the district court to amend the restitution orders for all defendants upon a showing of good cause for the failure to include Petitioners' losses in the initial claim for restitution.

The district court denied the motions to reopen on April 30, 2024. The district judge concluded that Petitioners could likely show "good cause" for their failure to participate in the restitution process. Victims, he noted, are not required to participate in the restitution process under the Victim Witness Protection Act, 18 U.S.C. § 3664(g)(1). Moreover, the district court explained that the VNS notices purporting to give notice to Petitioners "do not clearly explain that restitution is different from remission" and "consist of multiple pages completely filled with very small text and no distinguishing emphatic features, like bolded or underlined sections." The district court further highlighted that the government made at least "two substantial missteps" when it failed to communicate Petitioners' losses *and* failed to inform Petitioners as to the amounts they would receive in restitution. Nonetheless, the district court declined to amend restitution because it determined that Petitioners did not "discover further losses subsequent to sentencing" under

18 U.S.C. § 3664(d)(5), and the district court believed no other statutory provision covered this circumstance.

The district court concluded that: "If I had discretion to grant their motion, the equities weigh in their favor. Nothing in this Order precludes the victims from filing for writs of mandamus in the appellate court." These petitions for mandamus followed.

## STANDARD OF REVIEW

Petitions for writs of mandamus under the Crime Victims' Rights Act are subject to "ordinary standards of appellate review." *In re Doe*, 57 F.4th 667, 672–73 (9th Cir. 2023). Legal conclusions are reviewed de novo, factual findings are reviewed for clear error, and discretionary judgments are reviewed for abuse of discretion. *Id.* A court must "issue the writ whenever [it] find[s] that the district court's order reflects an abuse of discretion or legal error." *Kenna v. U.S. Dist. Ct.*, 435 F.3d 1011, 1017 (9th Cir. 2006).

## DISCUSSION

### I.  Statutory Background

"Federal courts have no inherent power to award restitution, but may do so only pursuant to statutory authority." *United States v. Follet*, 269 F.3d 996, 998 (9th Cir. 2001). Three statutory sources are relevant to this matter: the Victim and Witness Protection Act of 1982, the Mandatory Victims Restitution Act of 1996, and the Crime Victims' Rights Act of 2004. We briefly summarize each before turning to the merits.

### A.  The Victim and Witness Protection Act of 1982

The Victim and Witness Protection Act of 1982, largely codified at 18 U.S.C. §§ 3663, 3664, "gives district courts

the discretion to order a defendant who is convicted of a criminal offense to pay restitution, in full or in part, to the victim of that offense." *United States v. Kovall*, 857 F.3d 1060, 1064 (9th Cir. 2017) (citing 18 U.S.C. § 3663(a)(1)(A)–(B)). When exercising that discretion, a district court must consider "the amount of loss" each victim sustained as a result of the offense, the defendant's financial situation, as well as other prudential considerations. *See* 18 U.S.C. § 3663(a)(1)(B).

The Victim and Witness Protection Act also sets out procedures to determine restitution and enforce an award. *See* 18 U.S.C. § 3664. For example, an attorney for the government must "promptly provide the probation officer with a listing of the amounts subject to restitution" after "consulting, to the extent practicable, with all identified victims." *id.* § 3664(d)(1). Then, the probation officer is instructed to notify all identified victims of "the amounts subject to restitution submitted to the probation officer," *Id.* § 3664(d)(2)(ii), and "the opportunity of the victim to submit information to the probation officer concerning the amount of the victim's losses," *id.* § 3664(d)(2)(iii). Defendants then must submit information to the probation officer fully describing their financial resources. *Id.* § 3664(d)(3). Any dispute as to the amount or type of restitution must be resolved by the court by the preponderance of the evidence. *Id.* § 3664(e).

## B.  The Mandatory Victims Restitution Act of 1996

"As part of the Antiterrorism and Effective Death Penalty Act of 1996, Congress enacted the Mandatory Victims Restitution Act of 1996." *Kovall*, 857 F.3d at 1064. The Mandatory Victims Restitution Act, as the name suggests, made restitution mandatory for certain crimes,

including "any offense committed by fraud or deceit." *Id.* (citing 18 U.S.C. § 3663A(a)(1), (c)(1)(A)).

Procedurally, "[t]he rights to restitution conferred by the [Mandatory Victims Restitution Act] are generally enforceable under the procedures in the [Victim and Witness Protection Act]." *Id.* (citing 18 U.S.C. § 3663A(d)). Under the Mandatory Victims Restitution Act, "[n]o victim shall be required to participate in any phase of a restitution order." 18 U.S.C. § 3664(g)(1). The Mandatory Victims Restitution Act therefore makes the government responsible for litigating restitution issues. *See Fed. Ins. Co. v. United States* ("*Federal Insurance*"), 882 F.3d 348, 357 (2d Cir. 2018). However, if a victim discovers "further losses," the Mandatory Victims Restitution Act created a procedure for the victim to petition the district court for an amended restitution order. *Id.* § 3664(d)(5) (requiring such motions be brought within 60 days of discovery and upon a showing of good cause).

## C.  The Crime Victims' Rights Act of 2004

Unsatisfied with the existing scheme of victims' rights, a bipartisan group of legislators advocated for a constitutional amendment guaranteeing procedural rights for crime victims. *Federal Insurance*, 882 F.3d at 357 (citing S.J. Res. 1, 108th Cong. (2003)). When that effort stalled, Congress passed the Crime Victims' Rights Act as part of the "Justice for All Act of 2004." *Federal Insurance*, 882 F.3d at 357–58 (describing the legislative history); *see also* David E. Aaronson, *New Rights and Remedies: The Federal Crime Victims' Rights Act of 2004*, 28 PACE L. REV. 623, 632 & n.34 (2008) (explaining the Crime Victims' Rights Act passed with little debate).

The language in the Crime Victims' Rights Act, 18 U.S.C. § 3771, is almost identical to the proposed constitutional amendment. *See Kenna*, 435 F.3d at 1016 (describing the legislative history). It enumerates a series of "rights" that federal law provides to crime victims. *See* 18 U.S.C. § 3771(a). These include the right to notice of public court proceedings or parole proceedings; the right to be heard at public proceedings in the district court involving release, plea, sentencing, or any parole proceeding; the right to be informed in a timely manner of a plea bargain or deferred prosecution agreement; the right to full and timely restitution "as provided in law;" and others. *Id.*

The Crime Victims' Rights Act then "provides mechanisms" for a victim, or a victim's lawful representative, to assert the victim's rights. *Kovall*, 857 F.3d at 1065. Section 3771(d)(3), titled "Motion for relief and writ of mandamus," states:

> The rights described in subsection (a) shall be asserted in the district court in which a defendant is being prosecuted for the crime or, if no prosecution is underway, in the district court in the district in which the crime occurred. The district court shall take up and decide any motion asserting a victim's right forthwith. If the district court denies the

relief sought, the movant may petition the
court of appeals for a writ of mandamus.[4]

18 U.S.C. § 3771(d)(3). "There are limitations on the relief
a victim may obtain" through these procedures. *Kovall*, 857
F.3d at 1065. The failure to provide a right under the Crime
Victims' Rights Act is not grounds for a new trial. 18 U.S.C.
§ 3771(d)(5). Moreover, § 3771(d)(5) further explains that:

> A victim may make a motion to re-open a
> plea or sentence only if –
> > (A) the victim has asserted the right to be
> >     heard before or during the proceeding
> >     at issue and such right was denied;
> > (B) the victim petitions the court of
> >     appeals for a writ of mandamus
> >     within 14 days; and
> > (C) in the case of a plea, the accused has
> >     not pled to the highest offense
> >     charged.

*Id.* Critically, however, § 3771(d)(5) states that "[t]his
paragraph does not affect the victim's right to restitution as
provided in title 18, United States Code." *Id.*

The Crime Victims' Rights Act also required the
Department of Justice to promulgate regulations to enforce
crime victims' rights. Congress mandated that those

---

[4] Section 3771(d)(3) further requires that the court of appeals shall take
up and decide any such petition within 72 hours after the petition has
been filed, unless the litigants, with the approval of the court, stipulate
otherwise. The parties have waived the time limit. *See In re Doe*, 50 F.4th
1247, 1253 (9th Cir. 2022) (holding parties can agree to extend the 72-
hour deadline).

regulations "require a course of training for employees and offices of the Department of Justice that fail to comply with provisions of Federal law pertaining to the treatment of crime victims" and "contain disciplinary sanctions" for Department of Justice employees who "willfully or wantonly" failed to comply with Federal law. *Id.* § 3771(f)(2)

## II. The Merits

The Crime Victims' Rights Act enumerates a right to "full and timely restitution as provided in law." 18 U.S.C. § 3771(a)(6). In *United States v. Kovall*, we explained that this language in the Crime Victims' Rights Act does not itself create a substantive right to full and timely restitution. 857 F.3d at 1070. Rather, the Crime Victims' Rights Act "simply repeats" the right to full and timely restitution as provided in other laws, namely the Victim and Witness Protection Act and the Mandatory Victims Restitution Act. *Id*. In this case, all parties agree that the Mandatory Victims Restitution Act provides the substantive right to restitution in 18 U.S.C. § 3663A(b)(1)(B). Under that provision, the district court should have ordered restitution equal to the greater of "the value of the property on the date of the damage, loss, or destruction," or "the value of the property on the date of sentencing." 18 U.S.C. § 3663A(b)(1)(B). The district court did not do so and declined to reopen restitution proceedings after Petitioners sought to correct the error through the procedure set forth in 18 U.S.C. § 3664(d)(5). Because the district court misinterpreted § 3664(d)(5), we grant the petitions for writs of mandamus

pursuant to the Crime Victims' Rights Act, 18 U.S.C. § 3771(d)(3).[5]

We first address our authority to grant mandamus relief under the Crime Victims' Rights Act. We then discuss whether § 3664(d)(5) of the Mandatory Victims Restitution Act permits relief under these circumstances.

## A. The Crime Victims' Rights Act permits mandamus relief here.

Through § 3771(d)(3) of the Crime Victims' Rights Act, Congress created a procedure to ensure crime victims may petition for a writ of mandamus. *See* 18 U.S.C. § 3771(d)(3); *see also Kovall*, 857 F.3d at 1072-73 (explaining victims may not directly appeal an adverse decision under the Mandatory Victims Restitution Act but must instead petition for mandamus under § 3771(d)(3)). Section 3771(d)(5) limits the relief available when a victim moves to reopen a plea or sentence. We conclude that Petitioners are entitled to seek mandamus relief to challenge the denial of § 3664(d)(5) petitions through the procedures set forth in § 3771(d)(3) and that the limitations in § 3771(d)(5) do not prohibit the district court from granting such petitions.

### 1. 18 U.S.C. § 3771(d)(3) permits mandamus relief.

We start with § 3771(d)(3). In relevant part, § 3771(d)(3) provides that:

> The rights described in subsection [§ 3771(a)] shall be asserted in the district

---

[5] Although we conclude that the district court misinterpreted § 3664(d)(5), we appreciate the district judge's thoughtful efforts to resolve this difficult matter of first impression.

court in which a defendant is being prosecuted for the crime or, if no prosecution is underway, in the district court in the district in which the crime occurred. The district court shall take up and decide any motion asserting a victim's right forthwith. If the district court denies the relief sought, the movant may petition the court of appeals for a writ of mandamus.

18 U.S.C. § 3771(d)(3). At issue is whether § 3771(d)(3) permits crime victims to assert their right to full and timely restitution in the manner presented: via motions to reopen under § 3664(d)(5) filed after judgment was entered in the underlying criminal cases. We first consider whether the phrase "no prosecution is underway" in § 3771(d)(3) refers to the period after judgment was entered. We then address whether the phrase "any motion asserting a victim's right" refers to a petition under § 3664(d)(5) seeking to vindicate the right to "full and timely restitution as provided in law." 18 U.S.C. § 3771(a)(6).

### a. *"No prosecution is underway"*

The first question relates to timing. Section 3771(d)(3)'s first sentence provides that "[t]he rights described in subsection (a) shall be asserted in the district court in which a defendant is being prosecuted for the crime *or, if no prosecution is underway*, in the district court in the district in which the crime occurred." 18 U.S.C. § 3771(d)(3) (emphasis added). The defendants contend that § 3771(d)(3) does not permit post-judgment requests for relief. We disagree.

The dispute turns on the phrase "no prosecution is underway." *Id.* "Interpretation of a . . . phrase depends upon reading the whole statutory text." *Dolan v. USPS*, 546 U.S. 481, 486 (2006). "Our goal is to understand the statute as a symmetrical and coherent regulatory scheme, and to fit, if possible, all parts into a harmonious whole." *United States v. Wing*, 682 F.3d 861, 867 (9th Cir. 2012). Examining the whole text of the Crime Victims' Rights Act, many of the rights therein are post-judgment rights. *See* 18 U.S.C § 3771(a). To effectuate these rights coherently, the "no prosecution is underway" period must include the time following sentencing.[6]

For example, the Crime Victims' Rights Act guarantees victims the right to be "reasonably heard at any public proceeding in the district court involving release, plea, sentencing, or any parole proceeding." 18 U.S.C. § 3771(a)(4); *see also id.* § 3771(a)(2) (providing a right to notice of such proceedings). Parole proceedings, of course, occur after sentencing and judgment by their very definition. *See United States v. Kincade*, 379 F.3d 813, 817 n.2 (9th Cir. 2004) (explaining federal parole continues to exist for those sentenced prior to 1987); 18 U.S.C. § 3551 note (documenting extensions). And, although release may occur prior to sentencing in the pre-trial release context, release proceedings may also occur when a post-conviction prisoner is released from a custodial sentence. *See*, *e.g.*, *United States v. Ebbers*, 432 F. Supp. 3d 421, 424 (S.D.N.Y. 2020)

---

[6] To be clear, we conclude today only that "no prosecution is underway" permits victims to assert their rights via a motion after prosecution has concluded. Whether the "no prosecution is underway" clause permits crime victims to assert their rights via motion before prosecution has commenced is not before us, and we need not reach that question.

(assuming that the Crime Victims' Rights Act applies to motions for compassionate release).

The Crime Victims' Rights Act also contemplates that crime victims will assert their rights in habeas corpus proceedings. Section 3771(b)(2)(A) provides that a crime victim has a limited set of rights—including the right to be reasonably heard—in a "Federal habeas corpus proceeding arising out of a State conviction." Section 3771(b)(2)(B)(i) specifically states that those limited rights "may be enforced by the crime victim or the crime victim's lawful representative in the manner described in [§ 3771(d)(1) and § 3771(d)(3).]" Put differently, § 3771(b)(2)(B) expressly instructs crime victims to file "any motion" asserting victims' rights in post-judgment habeas corpus proceedings via § 3771(d)(3).

Because the Crime Victims' Rights Act affords these post-judgment rights and provides mechanisms for their enforcement, the "no prosecution is underway" clause must be read to contemplate post-judgment enforcement. *See* Scalia and Garner, *Reading Law: The Interpretation of Legal Texts* 181 (2012) ("The provisions of a text should be interpreted in a way that renders them compatible, not contradictory."). Thus, when "no prosecution is underway" *because the prosecution has ended*, crime victims may file motions asserting their rights "in the district court in the district in which the crime occurred." 18 U.S.C. § 3771(d)(3). Admittedly, if the prosecution occurred in a district other than "the district in which the crime occurred," then "the district in which the crime occurred" could be a district court unfamiliar with the underlying criminal

matter. [7] This potential anomaly is mitigated, however, through the Sixth Amendment's guarantee that those two districts will almost always be the same. *See* U.S. Const. amend. VI ("In all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial, by an impartial jury of the State and district wherein the crime shall have been committed . . . ."); *see also* Fed. R. Crim. P. 18 ("Unless a statute or these rules permit otherwise, the government must prosecute an offense in a district where the offense was committed."). We therefore conclude that § 3771(d)(3)'s "no prosecution is underway" clause permits crime victims like Petitioners to file motions asserting their rights after prosecution has ended.

### b.   *"Any motion asserting a victim's right"*

We next conclude that a petition to reopen restitution under § 3664(d)(5) is "any motion asserting a victim's right" within the meaning of § 3771(d)(3). As we stated in *Kovall*, "[t]he [Crime Victims' Rights Act] provides mechanisms for enforcing a victim's rights under the Act." 857 F.3d at 1065. Specifically, § 3771(d)(3) directs the district court to consider "any motion" asserting crime victims' rights. The term "any" is "broad and all-encompassing." *Olympic Forest Coal. v. Coast Seafoods Co.*, 884 F.3d 901, 906 (9th Cir. 2018). The word "motion" means "[a] written or oral application requesting a court to make a specified ruling or order." *Motion*, BLACK'S LAW DICTIONARY (8th ed. 2004). And the Crime Victims' Rights Act explicitly contemplates that crime victims may bring "motion[s] to reopen" prior proceedings. *See* 18 U.S.C. § 3771(d)(5) (providing

---

[7] In this matter, the defendants conceded in their plea agreements that the crime occurred in the Northern District of California.

procedural limitations on motions to reopen pleas and sentences *other* than those seeking restitution).

Considering the text of these provisions together, we conclude that the term "any motion asserting a victim's right" in § 3771(d)(3) includes Petitioners' post-judgment petitions to correct the restitution orders under § 3664(d)(5). Though formally styled as "petitions," crime victims' written requests to the district court to reopen restitution under § 3664(d)(5) fall comfortably within "any motion." And as required to invoke our mandamus authority under § 3771(d)(3), such petitions assert one of the rights set forth in § 3771(a) of the CVRA: the "right to full and timely restitution as provided in law." 18 U.S.C. § 3771(a)(6). As we explained in *Kovall*, the restitutionary right in § 3771(a) incorporates the substantive right to restitution created by the Mandatory Victims Restitution Act. 857 F.3d at 1070. So petitions to amend restitution orders under § 3664(d)(5) "assert[] a victim's right" as described in § 3771(a). Where, as here, a "district court denies the relief sought" in such petitions, § 3771(d)(3) permits crime victims like Petitioner to seek mandamus relief from this court.

The enactment history of the Crime Victims' Rights Act also supports this textual analysis. Following the Victim and Witness Protection Act of 1982 and the Mandatory Victims Restitution Act of 1996, Congress enacted the Crime Victims' Rights Act of 2004 to make victims "independent participants in the criminal justice process." *Kenna*, 435 F.3d at 1013 (describing legislative history). Notably, the Crime Victims' Rights Act's text is "almost identical" to that of the proposed constitutional amendment seeking to expand procedural protections for crime victims. *Id.* Thus, although the Crime Victims' Rights Act does not create new substantive entitlements to restitution, the text "makes clear

that its procedural tools are also available to vindicate a victim's entitlement to restitution." *Federal Insurance*, 882 F.3d at 359. It "confers standing on victims to seek restitution on their own behalf, rather than relegating them to bystander status while the government decides, for its own reasons and pursuant to its own strategy, whether, for whom, and in what amount to seek restitution." *Id.*

That is what occurred here. After the government's errors resulted in an incorrect restitution order, Petitioners asserted their rights to full restitution as provided in the Mandatory Victims Restitution Act. The district court denied relief. These petitions for mandamus followed. This is the procedural mechanism explicitly contemplated in 18 U.S.C. § 3771(d)(3). *See In re Doe*, 50 F.4th 1247, 1250 (9th Cir. 2022) (explaining "[t]he CVRA requires a district court to decide a motion asserting a victim's rights, including an application for restitution, 'forthwith'").

### 2. The limitations on motions to reopen in 18 U.S.C. § 3771(d)(5) do not apply to petitions to amend restitution under § 3664(d)(5).

We next must consider whether the limitations in 18 U.S.C. § 3771(d)(5) affect a district court's authority to grant petitions to amend restitution under § 3664(d)(5). As stated above, § 3771(d)(5) provides that:

> A victim may make a motion to re-open a plea or sentence only if –
>   (A) the victim has asserted the right to be heard before or during the proceeding at issue and such right was denied;

> (B) the victim petitions the court of
>     appeals for a writ of mandamus
>     within 14 days; and
>
> (C) in the case of a plea, the accused has
>     not pled to the highest offense
>     charged.
>
> This paragraph does not affect the victim's
> right to restitution as provided in title 18,
> United States Code.

18 U.S.C. § 3771(d)(5).

Through § 3771(d)(5)'s final sentence, Congress exempted parties challenging restitution orders through 18 U.S.C. § 3664(d)(5) from the procedural hurdles in § 3771(d)(5). The key word is "affect." *Id.* § 3771(d)(5). The defendants object that "affect" does not mean "apply to." Instead, they provide a variety of definitions for "affect" including "to act upon; influence; change; enlarge or abridge; often used in the sense of acting injuriously upon persons or things." *Affect*, BLACK'S LAW DICTIONARY 57 (6th ed. 1990).

We see little difference between these proposed definitions. Whether "affect" means "to apply to," "to act upon," "to influence," or to "enlarge or abridge," the limitations in § 3771(d)(5) would act upon, influence, and abridge crime victims' right to petition for a corrected restitution order through § 3664(d)(5) and § 3771(d)(3). For example, the requirement in § 3771(d)(5)(A) states that a victim can only bring a motion to reopen if the victim "has asserted the right to be heard before or during the proceeding at issue and such right was denied." But the Mandatory Victims Restitution Act provides that "[n]o victim shall be required to participate in any phase of a restitution

order," 18 U.S.C. § 3664(g)(1). Thus, applying the limitation in § 3771(d)(5)(A) to restitution motions brought through § 3664(d)(5) and § 3771(d)(3) in combination would abridge crime victims' rights under the Mandatory Victims Restitution Act.

We are not alone in adopting this commonsense statutory construction. In *Federal Insurance Co. v. United States*, 882 F.3d 348 (2d Cir. 2018), the Second Circuit held that the "most straightforward" and "correct" reading of § 3771(d)(5) was that "petitions seeking restitution are exempted from all of the section's limitations, including its fourteen-day deadline for seeking mandamus to reopen a sentence." *Id.* at 363–64. The Second Circuit also reasoned that applying § 3771(d)(5) in the restitution context posed significant practical difficulties. *Id.* at 364. As noted above, § 3771(d)(5)(A) requires that the victim "has asserted the right to be heard before or during the proceeding at issue and such right was denied." The Second Circuit remarked that "[i]t cannot be the case that the district court can render its restitution decisions unreviewable simply by providing a victim an opportunity to argue its position." *Federal Insurance*, 882 F.3d at 364.

We agree. Section 3771(d)(5)'s procedural hurdles make sense when applied to other provisions in the Crime Victims' Rights Act. For example, a crime victim seeking to reopen a sentencing based on the victim's right to be heard, § 3771(a)(4), must be able to show that they were denied the right to speak at the prior proceeding, § 3771(d)(5)(A). Likewise, a victim seeking to reopen a plea to advocate for harsher treatment of a defendant in a plea bargain must show a higher charged offense exists. *See* 18 U.S.C. § 3771(d)(5)(C). As explained above, however, these provisions make little sense when applied to restitution

proceedings because a district court could immunize itself from review merely by granting the victim an opportunity to participate. *See Federal Insurance*, 882 F.3d at 364. Accepting the straightforward restitution exemption in § 3771(d)(5) obviates these practical irregularities.

In response, the defendants propose that a severability analysis is implicit within § 3771(d)(5). The defendants argue that § 3771(d)(5) applies to restitution proceedings unless its requirements are inconsistent with a right to restitution under Title 18. For example, Ditman concedes that because § 3771(d)(5)(A) conflicts with the Mandatory Victims Restitution Act's statement that victims are not obligated to participate in criminal proceedings, *see* 18 U.S.C. § 3664(g)(1), § 3771(d)(5)(A)'s requirement that victims seek a right to be heard does not apply in the restitution context. By contrast, he asserts that no provision in Title 18 contradicts the 14-day time limitation in § 3771(d)(5)(B). Therefore, he claims that the time limit in § 3771(d)(5)(B) applies to restitution motions.

This argument is unpersuasive. First, § 3771(d)(5)'s text refers to "[t]his paragraph" as a whole, and the requirements therein use the conjunctive term "and." 18 U.S.C § 3771(d)(5). There is no suggestion in that text that these requirements can be severed from one another based on their consistency with other federal restitution provisions. Indeed, we have found no other Circuit that has interpreted § 3771(d)(5) as Ditman proposes.[8] Secondly, if Congress

---

[8] The First Circuit has discussed, in passing, the 14-day deadline in § 3771(d)(5) as part of the Crime Victims' Rights Act's mandamus procedure. *United States v. Aguirre-Gonzalez*, 597 F.3d 46, 55 (1st Cir. 2010). That decision, however, did not address the restitution exception

intended to apply only the timeliness requirement in § 3771(d)(5) to petitions seeking restitution under § 3664(d)(5), it would surely have said so straightforwardly rather than requiring district judges to examine the whole of Title 18 to discern the meaning of this provision. *See Cyan, Inc. v. Beaver Cnty. Emps. Ret. Fund*, 583 U.S. 416, 431 (2018) ("Congress does not hide elephants in mouseholes." (internal quotation marks omitted)).

We therefore conclude that petitions seeking to amend restitution orders through § 3664(d)(5) and § 3771(d)(3) in combination are exempted from § 3771(d)(5)'s limitations. There are "strong policy reasons that might have motivated Congress to allow petitioners more time to challenge restitution orders than to intervene in other aspects of a defendant's plea or sentence." *Federal Insurance*, 882 F.3d at 364. "To be sure speed is important" in determining restitution obligations. *Dolan v. United States*, 560 U.S. 605, 612 (2010). But the federal restitution scheme "seeks speed primarily to help the victims of crime and only secondarily to help the defendant." *Id.* at 613. By exempting petitions to reopen restitution brought under § 3664(d)(5) and § 3771(d)(3) from § 3771(d)(5)'s limitations, the Crime Victims' Rights Act elevated crime victims' rights above finality concerns in the restitution context. *Cf. Federal Insurance*, 882 F.3d at 364.

In sum, we conclude that Petitioners are entitled to seek mandamus relief under the Crime Victims' Rights Act, 18 U.S.C. § 3771(d)(3). Under that provision, a court must "issue the writ whenever [it] find[s] that the district court's

---

in § 3771(d)(5) at all. Moreover, that case concerned an appeal of a restitution order, which the First Circuit declined to convert into a mandamus petition. *Id.* That circumstance is not present here.

order reflects an abuse of discretion or legal error." *Kenna*, 435 F.3d at 1017. And if such relief is granted, § 3771(d)(5) does not prevent the district court from granting Petitioners' requests to amend the restitution orders pursuant to § 3664(d)(5). We next consider whether the district court erred in its interpretation of § 3664(d)(5).

## B. 18 U.S.C. § 3664(d)(5) permits victims to timely seek an amended restitution order after discovering that the original order did not include losses that, for good cause, were not initially claimed.

"The 'primary and overarching goal' of the Mandatory Victims Restitution Act 'is to make victims of crime *whole*, to *fully* compensate these victims for their losses and to restore these victims to their original state of well-being.'" *United States v. Moreland*, 622 F.3d 1147, 1170 (9th Cir. 2010) (emphasis in original) (quoting *United States v. Gordon*, 393 F.3d 1044, 1053 (9th Cir. 2004)); *see also Dolan*, 560 U.S. at 612 ("[T]he statute seeks primarily to ensure that victims of a crime receive full restitution.")

To ensure that victims are fully compensated for their losses, 18 U.S.C. § 3664 prescribes a process for courts to determine the proper amount of restitution. *See id.* § 3664(a)–(f); *see also Moreland*, 622 F.3d at 1171. That process starts with the probation officer preparing a "complete accounting of the losses to each victim." 18 U.S.C. § 3664(a). It should end with the court "order[ing] restitution to each victim in the full amount of each victim's losses as determined by the court." *Id.* § 3664(f)(1)(a). But Congress foresaw that this process might sometimes fail to capture a victim's entire losses. So as part of the Mandatory Victims Restitution Act, Congress created a process for

victims to request correction of insufficient restitution awards in limited circumstances. *See id.* § 3664(d)(5). Section 3664(d)(5) provides:

> If the victim's losses are not ascertainable by the date that is 10 days prior to sentencing, the attorney for the Government or the probation officer shall so inform the court, and the court shall set a date for the final determination of the victim's losses, not to exceed 90 days after sentencing. If the victim subsequently discovers further losses, the victim shall have 60 days after discovery of those losses in which to petition the court for an amended restitution order. Such order may be granted only upon a showing of good cause for the failure to include such losses in the initial claim for restitutionary relief.

*Id*.

These petitions ask whether § 3664(d)(5) permits victims to timely seek an amended restitution order after discovering that the original restitution determination did not include losses that, for good cause, were not initially claimed. It does.

### 1. Petitioners "subsequently discover[ed] further losses" within the meaning of § 3664(d)(5).

Because "subsequently" and "further" are relational terms, we must read "subsequently discovers further losses" in context. The phrase refers to the preceding sentence of § 3664(d)(5), which concerns "the final determination of the

victim's losses." 18 U.S.C. § 3664(d)(5). Thus, the provision contemplates a situation in which, "subsequent[]" to that determination, victims "discover[] . . . losses" that are "further" to those determined by the district court. Put another way, victims "subsequently discover[] further losses" where, as here, they learn of a difference between the district court's final restitution determination and "the full amount of each victim's losses" the district court should have determined under the Mandatory Victims Restitution Act. 18 U.S.C. § 3664(f)(1)(a). If victims can show "good cause" for the failure to include those losses in the initial claim for restitution, the district court may grant a timely petition to amend the order.

Sometimes there is good cause for the omission of losses from an initial restitution claim, which results in losses "further" to the district court's restitution determination, because victims did not know of the losses. In the simplest case, "further losses" may arise because victims did not know that some of their property had been stolen at the time of their initial restitution claim. But § 3664(d)(5) also contemplates variations on this situation. For example, a victim may reasonably believe that the initial claim included all the medical expenses from a hospital stay to treat physical injuries, but may later receive a surprise bill for that stay after the district court's restitution determination. *See* 18 U.S.C. § 3663A(b)(2)(A) (mandating restitution in "an amount equal to the cost of necessary medical . . . services"). Even though the victim knew of the losses from the hospital stay generally, and though none of the losses were incurred after the final restitution determination, there were "further losses" not accounted for in the initial claim or restitution determination. Similarly, if a victim of criminal property damage receives a bill for repair of the damaged property

after the final determination, those are "further losses." *See* 18 U.S.C. § 3663A(b)(1)(B) (mandating restitution to compensate for the value of damaged property).

Other times, as in the unusual circumstances here, victims may know the full amount of their losses but not know of the omission of the losses from the initial restitution claim (or, consequently, from the district court's final restitution determination). When the victims learn of the losses omitted from the final determination, that too is a "subsequent[] discover[y]" of "further losses" within the meaning of § 3664(d)(5). And there still may be good cause for the failure to include them in the initial claim. Because the Mandatory Victims Restitution Act provides that "[n]o victim shall be required to participate in any phase of a restitution order," 18 U.S.C. § 3664(g)(1), victims may rely on the government to assert their rights to restitution. Petitioners did so, informing the government of the amount of stolen Ether with the expectation that the government would claim their resulting losses. But due to multiple mistakes by the government—including a lack of internal communication, a failure to inform Petitioners of the dollar value being claimed on their behalf, and the under-calculation of Petitioners' losses based on the date of the theft instead of the date of sentencing—the government ultimately claimed only a fraction of Petitioners' losses. As the district court recognized, this likely amounts to good cause for the failure to include all the Petitioners' losses in the initial claim. Like in the case of a surprise medical or repair bill, § 3664(d)(5) provides the process to seek an amended restitution order that includes Petitioners' "further losses."

The word "losses" in § 3664(d)(5) encompasses the value of the stolen Ether. "[T]he words of a statute must be

read in their context and with a view to their place in the overall statutory scheme." *West Virginia v. EPA*, 597 U.S. 697, 721 (2022) (quoting *Davis v. Mich. Dept. of Treasury*, 489 U.S. 803, 809 (1989)). So we must interpret "subsequently discovers further losses" in the context of the Mandatory Victims Restitution Act, a statute that mandates compensation to victims for all sorts of losses resulting from criminal offenses. Of course, that includes property losses, 18 U.S.C. § 3663A(b)(1)(B), but it also includes losses of monetary value, such as lost income, medical expenses, and childcare costs. *See id.* § 3663A(b)(2)–(4). And even for some property offenses, such as where property is damaged, the victim's only "loss" is lost value. *See id.* § 3663A(b)(1)(B). Given this statutory context, we decline to construe § 3664(d)(5) to permit victims to seek amended restitution orders based on some recoverable losses, but not others. Instead, if the district court's restitution determination fails to include recoverable losses of any kind, those are "further losses" for which victims may seek an amended restitution order.

Reading § 3664(d)(5) narrowly is also contrary to the interpretive approach demanded by the Supreme Court and by our own precedent. As the Supreme Court explained in *United States v. Dolan*, "the [Mandatory Victims Restitution Act]'s text places primary weight upon, and emphasizes the importance of, imposing restitution upon those convicted of certain federal crimes." 560 U.S. at 612. Both the Supreme Court and our Court have warned against reading § 3664(d)(5)'s requirements "as depriving the sentencing court of the power to order restitution" in the correct amount, as doing so "would harm those—the victims of crime—who likely bear no responsibility . . . and whom the statute also seeks to benefit." *Id.* at 613–14; *see also Moreland*, 622 F.3d

at 1171–73; *United States v. Cienfuegos*, 462 F.3d 1160, 1162–63 (9th Cir. 2006). Yet the district court did just that. It interpreted § 3664(d)(5) too narrowly to effectuate Congress's command to ensure "restitution to each victim in the full amount of each victim's losses." 18 U.S.C. § 3664(f)(1)(a). Nothing in the Mandatory Victims Restitution Act warrants such a result.

## 2. Petitioners may satisfy § 3664(d)(5)'s "good cause" and timeliness requirements.

Petitioners "subsequently discover[ed] further losses" within the meaning of § 3664(d)(5). But that alone does not entitle them to amended restitution orders. They must also show "good cause" for the omission of those losses from the initial restitution claims presented to the district court. 18 U.S.C. § 3664(d)(5). The district court noted that Petitioners could likely show good cause because the omission was due to the Government's errors, not their own. But the district court made no final determination on good cause. Nor did the district court address whether Petitioners sought amended restitution orders within sixty days of discovering their "further losses," or the consequences of missing that deadline. *See Dolan*, 560 U.S. at 611 (holding that a separate 90-day deadline in § 3664(d)(5) is a non-jurisdictional "time-related directive" that "does not deprive the court of the power to order restitution"). We therefore remand to allow the district court to assess whether Petitioners satisfy those requirements.

In sum, the district court's interpretation of § 3664(d)(5)'s "further losses" provision was legal error. We therefore grant Petitioners' requests for writs of mandamus

under § 3771(d)(3).**[9]** *See Kenna*, 435 F.3d at 1017 ("[W]e must issue the writ whenever we find that the district court's order reflects an abuse of discretion or legal error."). We remand to the district court to assess whether Petitioners satisfy the timing and good cause requirements set forth in § 3664(d)(5).**[10]**

## CONCLUSION

For the reasons stated above, the petitions seeking mandamus relief from the district court order denying the request to reopen restitution are **GRANTED**. These cases are **REMANDED** for further proceedings consistent with this opinion.

---

[9] Faulk also raises an Eighth Amendment proportionality challenge for the first time on appeal. Because he failed to raise this Eighth Amendment argument in the district court, the argument is waived. *See Armstrong v. Brown*, 768 F.3d 975, 981 (9th Cir. 2014) (explaining an "issue will generally be deemed waived on appeal if the argument was not raised sufficiently for the trial court to rule on it."). Moreover, as we have previously held, "[w]here the amount of restitution is geared directly to the amount of the victim's loss caused by the defendant's illegal activity, proportionality is already built into the order." *See United States v. Dubose*, 146 F.3d 1141, 1145 (9th Cir. 1998).

[10] If the district court determines that Petitioners are entitled to relief, the district court should also consider whether to use the "day high" price of Ether or some other price marker as of the date of the defendants' original sentencings.

JOHNSTONE, Circuit Judge, concurring:

As the majority opinion details, despite Petitioners timely informing the Government of their stolen Ether, "substantial missteps" by the Government led the district court to enter restitution orders in amounts far below the Petitioners' actual losses. Congress provided a limited process for crime victims to correct such erroneous restitution orders in the Mandatory Victims Restitution Act ("MVRA"), 18 U.S.C. § 3664(d)(5). I agree that Petitioners "subsequently discover[ed] further losses" within the meaning of § 3664(d)(5), so the district court may amend the restitution orders if Petitioners satisfy § 3664(d)(5)'s remaining requirements. I also agree that the mandamus procedure of the Crime Victims' Rights Act ("CVRA"), 18 U.S.C. § 3771(d)(3), permits our court to correct the erroneous denial of the § 3664(d)(5) petitions. And I agree that the CVRA's limitations on "motion[s] to re-open a plea or sentence" do not "affect" the district court's ability to amend a restitution order under § 3664(d)(5). *See* 18 U.S.C. § 3771(d)(5). That is the extent of our court's holding on the issues presented by this case, and I join it in full.

To prevent any confusion about our holding's contribution to a vexing statutory scheme, I write separately to underscore two questions that this case leaves open for a future case that presents them.

*First*, to what extent, if any, does § 3771(d)(3) provide a standalone mechanism for crime victims to file motions asserting their restitutionary rights after final judgment? Petitioners contend that, even if their requests to amend the restitution orders did not fall within § 3664(d)(5), § 3771(d)(3) on its own empowered the district court to grant their requests. The majority opinion does not consider that

question because it holds that § 3664(d)(5) was the proper vehicle for the district court to consider Petitioners' requests. So for our purposes, § 3771(d)(3) comes into play only because it grants us mandamus authority to review the district court's denial of the § 3664(d)(5) petitions. Thus, the opinion reasons that post-judgment § 3664(d)(5) petitions are motions filed pursuant to § 3771(d)(3) to explain the scope of § 3771(d)(3)'s *mandamus* procedure, not § 3771(d)(3)'s separate mechanism for district-court motions. The opinion does not address whether § 3771(d)(3) alone allows victims to file post-judgment motions asserting restitutionary rights when § 3664(d)(5) does not apply. And there is good reason to think that it does not. Because the CVRA incorporates the "right to full and timely restitution" created by the MVRA, *see United States v. Kovall*, 857 F.3d 1060, 1070 (9th Cir. 2017) (quoting 18 U.S.C. § 3771(a)(6)), § 3771(d)(3) likely incorporates § 3664(d)(5)'s limits on the timely enforcement of that right. Even if the CVRA did not incorporate the MVRA's limits by its express terms, it would be odd to read § 3771(d)(3) to repeal those limits by implication because we "presume that by passing a new statute Congress ordinarily does not intend to displace laws already in effect." *United States v. Novak*, 476 F.3d 1041, 1052 (9th Cir. 2007) (en banc); *see also Epic Sys. Corp. v. Lewis*, 584 U.S. 497, 510 (2018). But the majority opinion need not and does not consider this issue, so it remains an open question for another day.

*Second*, assuming that § 3771(d)(3) on its own provides for post-judgment motions asserting restitutionary rights, do § 3771(d)(5)'s limits on "motions to reopen a plea or sentence" apply to such motions? Section 3771(d)(5) contains a carveout specifying that its limits "do[] not affect the victim's right to restitution as provided in title 18."

18 U.S.C. § 3771(d)(5). As the majority opinion explains, this carveout means that—whatever its effect on motions filed solely under the CVRA—§ 3771(d)(5)'s limits do not "affect" victims' ability to assert their "right to restitution" through other processes "provided in Title 18," like § 3664(d)(5) of the MVRA. But whether § 3771(d)(5) limits victims' ability to assert their restitutionary rights under § 3771(d)(3) alone remains unresolved.

In sum, the majority opinion primarily addresses victims' ability to seek amendment of restitution orders under § 3664(d)(5) of the MVRA. It considers § 3771(d)(3) of the CVRA only as the source of our court's mandamus authority to correct the district court's denial of relief under § 3664(d)(5). And it discusses § 3771(d)(5) of the CVRA only to explain that the limits therein do not affect § 3664(d)(5)'s preexisting mechanism for amending restitution orders. With that understanding, I concur in the majority opinion in full.